## CRYER AND WIFE v. ANDREWS AND OTHERS.

It cannot be seriously urged, that the decree of the Probate Court of Bastrop county, by which the other brothers and sisters, or their children, were declared the heirs of the deceased, and the estate distributed among them, (in 1839,) can have any effect, in itself, upon the rights of Mrs. Cryer, who was no party to the proceeding; (she was an absent heir residing in Arkansas;) for it is a well established principle, that a partition is binding upon the parties only, who are before the Court, and those whom they virtually represent.

A partition by judicial proceeding, among several tenants in common (parceners) claiming the whole estate, to the exclusion of others (not represented,) is a notorious act of ouster; and the statute of limitations begins to run immediately, in favor of those who are in possession under the decree, against all who are not laboring under disability, or otherwise exempted from its operation.

The limitation of nine years, within which alien heirs are allowed (Hart. Dig. Art. 585, 600) to become citizens and take possession, or to sell, is not confined to the

question of forfeiture and escheat, between the heir and the government, but overrides the general law of limitations; and if the heir becomes a citizen within the nine years, he recovers the estate, not only as against the State, but also as against adverse possessors, although he do not "take possession" or sue within the nine years, unless, in the latter case, his claim should be barred by the general law of limitations, by the lapse of time after he became a citizen.

The limitation of nine years, within which alien heirs are allowed (Hart. Dig. Art. 585, 600) to become citizens and take possession or to sell, contains no exemption in favor of coverture, infancy or other disability.

Where descent was cast, after the adoption of the Constitution of the Republic, on alien heirs who were citizens of the United States, the effect of Annexation was, on the one hand, to make them citizens of Texas, within the 14th Section of the Act of 1840, to regulate the descent and distribution of intestates' estates, (Hart. Dig. Art. 585,) and on the other, to cause the general law of limitations to commence to run against them, in favor of all persons holding adverse possession.

An alien heir may either become a citizen and take possession within nine years, or he may sell, within that period, without becoming a citizen.

After the adoption of the Constitution of the Republic, the heirs who were citizens, did not inherit, to the exclusion of those who were aliens. *Quere?* Where the first in the order of descents, was an alien, and the second was a citizen, and the first did not take possession or sell within the nine years.

Appeal from Fayette. This action was commenced in the Court below by the appellants, Morgan and Mildred Cryer, to recover and have set apart to them, one equal eighth part of three-fourths of a league of land, to which they allege they are entitled as heirs at law of George Duty deceased.

There was an agreed state of facts, and the cause submitted to the Court, a jury being waived, and judgment for defendants, from which plaintiffs appealed.

It was admitted that the plaintiff was the sister of the decedent George Duty, and that she was a *feme covert* being the wife of Morgan Cryer.

It was further admitted that George Duty died in the fall of 1837, leaving the three-fourths of a league, as represented in plaintiffs' petition;—that immediately afterwards, to wit: in November, 1837, administration was granted to William Duty; that, at the February Term of the Probate Court for Bastrop county, the following persons were declared to be the heirs of said George Duty, to wit: Joseph Duty and William Duty, the brothers of decedent, Martha Scott, a sister of de-

cedent, four minor children of Ann Campbell also a sister, and Elizabeth Hazelett a sister; that the said Joseph and William appeared in person, the others being absent, whereupon the Court appointed William Duty curator for Elizabeth Hazelett, and Joseph Duty curator for all the other absent heirs mentioned; that an agreement was then entered into by the said Joseph and William Duty, acting for themselves and as curators respectively, for the heirs of Ann Campbell and Elizabeth Hazelett and husband, and Martha Scott acting for herself, partitioning the said three-fourths of a league of land amongst themselves. Whereupon the Court appointed W. Pinckney Hill, curator to execute title according to said partition; that final settlement having been made, the administration was closed on the — day of May, 1839; that said George Duty was unmarried and without any heirs of his body; that the plaintiff, Mildred Cryer, was his sister, and at the time of his death lived in the State of Arkansas, and has continued to reside there ever since; that it was known to the parties making partition of said land, that said Mildred was a sister of said George, (the decedent;) and that the same was known to the administrator at the time he commenced the administration; and that the defendants claim the whole of said three-fourths of a league.

It was admitted on the part of the plaintiffs, that the defendants hold and claim said land in severalty, immediately and mediately under deeds made to them in their seperate and individual rights, from the parties named in the judgment or decree of the Probate Court.


*A. J. Hamilton*, for appellants. The right of the plaintiffs, to a distributive portion of the real estate of the decedent, in common with the other brothers and sisters, was secured and protected by the 10th Section of the " General Provisions" of the Constitution of the Republic. And in pursuance of the constitutional provision, it is provided in the Act to regulate the descent and distribution of in-

testates, estates, approved 28th January, 1840, that "every "alien to whom any land may be devised or may descend, "shall have nine years to become a citizen of the Republic, and "take possession of such land ; or shall have nine years to sell "the same, before it shall be declared to be forfeited or before "it shall escheat to the Government." This limitation commenced running at the time of the passage of the Act, and not before. The provision in the Constitution declared the rights of parties, without determining the mode of asserting or prosecuting those rights, or fixing the time within which it should be done—both being left to further legislation. It will hardly be contended that the statute intended to refer, for the commencement of the nine years, to the moment when the right accrued ; this would be (waiving all minor objections) violative of the Constitution—it would be retro-active in the highest degree.

The mode pointed out by law for parties whose rights had been so protected by the Constitution, will be found in the Act "to enable part owners of land to obtain partition thereof and for other purposes" passed at the same session, but prior to the Act last referred to. (See 4 Vol. T. L. 71.)

II. It will be contended, however, that the action of the Probate Court of Bastrop county precludes the plaintiffs from maintaining their present suit.

It is not denied that the Probate Court had jurisdiction of the succession and settlement of the estate of the decedent, George Duty ; but, in order that the action of the Court may be valid, it was necessary that the law, conferring the jurisdiction, should have been complied with. The Probate Court had no jurisdiction over the persons or the interests of the plaintiffs, until the law had been complied with, giving notice and providing for their being suitably represented. If this has not been done, in reference to the plaintiffs, in the present case, the action of the Court, as to them, is a nullity. (6 Peters, 709 ; 2 How. U. S. R. 338.)

It was not necessary for the plaintiffs to appeal, even if they

had been notified, after the action of the Court, in time to have availed themselves of such a remedy; for the reason that they were not parties to the proceedings, and had not been brought within the pale of the Court's jurisdiction.

The Louisiana law prevailed here at the time of the distribution of Duty's estate; and by reference to the provisions of the Code of that State, it will be found, that the absolute requirements of the law, in vacant successions or those where the heirs or a part thereof are absent, necessary to give the Court jurisdiction or to authorize it to act in the premises, were, in this case wholly disregarded. (See Civil Code La. Art. 1106 to 1110 inclusive and 1119 to 1130 inclusive.)

If, in this case, the Court had, by an observance of the law, acquired jurisdiction of the plaintiffs, it is conceded that within the time limited by law, they would have been compelled to take an appeal, however much their rights may have been prejudiced; and the period of limitation under such circumstances would be a question not necessary now to discuss.

The plaintiffs admit that the defendants (as between themselves) hold in severalty, but say they are joint owners with them, and that they (the defendants) have no rights by reason of possession adverse to, or different from, those of plaintiffs; the possession of one joint owner or parcener is the possession of all. (10 S. & M. R. 440; and authorities cited.) The parties here are tenants in common. (4 Bibb, R. 420.)

It has been decided in Louisiana that the District Court has jurisdiction in an action of partition, where it embraces two objects; first to ascertain and determine the rights of the parties, to the property in question; and second to decree a partition between them. (Rhodes v. Rhodes, 10 La. R. 90.) Such is the present suit.


*J. F. Smith*, also, for appellants.


*R. Green*, for appellees. If it is decided that the clause of

the Constitution, in question, does not give to Congress the power of defining what shall be reasonable time for foreign heirs to come in, then it devolves on this Court to determine the question. We admit that the Act of 1840, does not operate, or pretend to operate, on any death or succession, previous to that time; but we contend that this Court, in determining what reasonable time is, for this purpose, ought to be guided by the opinion of Congress; which was, that nine years was reasonable time.

Having attempted to determine what reasonable time is, we will now endeavor to show, that the plaintiffs did not take possession therein, at least in the sense required by the Constitution. The general rule is, as stated by the counsel for appellants, that the possession of one tenant in common is the possession of all; but this is only a presumption of fact, and may be rebutted by evidence to the contrary. In this case, the plaintiffs admit that the defendants were holding adversely to them; the records show that they claimed to be the only heirs of Geo. Duty, and as such took exclusive possession. Hence the ordinary presumption that the possession of one tenant in common is the possession of all, is entirely rebutted.

In a case reported in 3 Howard, we find the following laid down: "If the attempt be made to obtain a partition, although "the legal proceeding by which it is effected, may be invalid "or defective, still, being a matter of public notoriety, the co-"tenant is bound, at his peril, to take notice of the claim to "adverse possession, thus set up. (p. 674, 679.)

But if it is true, that the possession of the defendants could be considered the possession of the plaintiffs, yet it is only constructive possession, while the statute requires actual possession.

But it is also a rule, that all acts *in pari materia* shall be construed together; now, in the Acts of Congress concerning alien heirs, already referred to, the words are, "to become a citizen of the Republic and take possession;" but the alien could never become a citizen of the Republic, by the resi-

dence of his co-parcener, and the requisition of the statute could only be fulfilled by removing to the State, which in this case was never done.

*J. Webb* and *J. Sayles*, also, for appellees. It might be a question, (did the circumstances of this case require us to present and urge it,) whether alien heirs could inherit at all, when there were citizen heirs residing in the country. The . provision seems to have been intended to suspend a declaration of forfeiture, or escheat, until the expiration of nine years from the death of the intestate; and to give to alien heirs that length of time to prevent it altogether, by coming in and making themselves citizens, or by selling the land to citizens. Now, if it was contemplated that there were citizen heirs, as well as aliens, the provision was nugatory and useless; as, in that event, the land could not have been escheated or forfeited, on the ground of alienage.

But it is unnecessary to urge this proposition, unless the plaintiff (admitting that she, as an alien, could inherit equally with citizen heirs,) has shown that she was within the rule, which constitutes the exception to the general law, when the suit was brought. This she has not done. There is no pretence that she and her husband became citizens, or sold her share of the land within nine years after the death of George Duty; and the record shows that they did not demand or sue for it until after the expiration of that time, and had there been no resident heirs capable of taking and holding the land, it would have escheated to the government under the law, before they ever asserted a claim to it.

It may be contended, however, that the nine years limited by the statute, did not begin to run until after the passage of the law in 1840; but this is not the construction given to similar statutes by this Court, and by the Supreme Court of the United States. The statute of 1840, in reference to this matter, is to all intents and purposes an " Act of limitation." In Gautier v. Franklin, this Court recognized and adopted the

rule of construction laid down by the Supreme Court of the United States in Ross *et al.* v. Duval *et al.* That rule is, "that where a statute of limitations prescribes the time with- "in which suit shall be brought, or an act done, and a part of "the time has elapsed, effect may be given to the Act, and the "time yet to run being a reasonable part of the whole time, "will be considered the limitation in the mind of the Legisla- "ture in such cases." (13 Pet. R. 64 ; 1 Tex. R. 745.) "The "term of prescription, in the case before the Supreme Court "of the United States, was ten years, seven of which had run "before the passage of the law, and the remaining three years "were considered by the Court as a reasonable part of the "whole time, and as the limitation intended by the Legisla- "ture." (1 Tex. R. 746.) George Duty, under whom the "plaintiff claims as heir, died in the fall of 1837. The Act of the Congress of the Republic, giving to alien heirs nine years to become citizens, or to sell their lands, was passed in January, 1840, less than three years after her right, if any, accrued. There was, then, more than six years of the time to run, within which she was required to act, and might have acted, after the passage of the law, before her right was barred ; and if three years in ten be deemed a reasonable part of the whole time, surely six and a half years will be deemed a rea- sonable part of nine years, and "will be considered (by the Court) as the limitation intended by the Legislature."

The decree of the Probate Court, partitioning the lands of George Duty among his resident heirs, is *res adjudicata* of their right, and was final. It remains unreversed, and is now irreversible. It cannot, at least, be reached collaterally.— (Grignon's Lessee v. Astor *et al.*, 2 Howard, 319.)

Even had there been fraud in obtaining the decree, yet the rights of third persons, which grew up under it, and who were not *participes fraudis*, but innocent purchasers, cannot be af- fected by it. Most of the defendants in this case, are by the plain- tiff's own showing, in that condition. They were innocent pur- chasers without knowledge of the fraud, if any were committed.

22

*A. J. Hamilton,* for appellants, in reply. Waiving for the present the question as to what under a statute would be reasonable time for asserting a right when no time is fixed, I respectfully submit that the position assumed, (that the nine years ran from the descent cast,) proceeds upon a total misapprehension of the intention and effect of the provision of the Constitution. It is clear that this provision was not intended to afford the remedy for alien heirs who might inherit property in Texas, but only to secure the right until future legislation could provide the remedy; hence it was said " that aliens " shall have a reasonable time to take possession, and dispose " of the same in a manner hereafter to be pointed out by law." Here was an exception in the organic law to the general provision against aliens holding land, except by titles derived from the government; and in the exception the right was saved, but the remedy referred to future legislation. Is it not manifest that the Convention intended that such heirs should have a specific remedy, before they should suffer any forfeiture of such right?

If it be assumed that the Act of 1840 " to regulate the distribution and descent of intestates' estates," in the 14th Section, (Hart. Dig. Art. 585,) confers the right (which I am willing to concede) as well as fixes the time, I am content. What I contend for is, that by virtue of the limitation fixed—nine years—no part of that time, which might, in a given case, have elapsed before the passage of the Act in question, can be computed. It is unlike a statute which prescribes the period for pursuing a remedy, which has always been open to the party. In the latter case an existing remedy is limited as to time simply; whereas, in the present case, the remedy is created and limited.

But let it be assumed that the statute of 1840 contemplated nothing more (as is indirectly contended by the counsel for the appellees) than giving aliens an opportunity of making themselves citizens, and taking possession of the lands, or that the becoming citizens was a condition precedent to the right

of suit; and still I am content. In either case, limitation only commenced running from the passage of the Act, in respect of rights accruing previous to its passage. The period prescribed had therefore not run at the date of the commencement of the suit. But it ceased to run at the period of the consummation of Annexation.

But I further insist that limitation did not run against the appellant at all. The suit was in the right of the wife, Mildred Cryer. By the 11th Section of the Act of limitations of 1841, (Hart. Dig. Art. 2387,) it is declared that no law of limitations, " except in the case provided for in the eighth Sec- " tion of the Act, shall run against infants, married women, " persons imprisoned, or persons of unsound mind, during the " existence of their respective disabilities ; and when the law " of limitations did not commence to run prior to the exist- " ence of these disabilities, such persons shall have the same " time allowed them after their removal, that is allowed to " to others by this and other laws of limitations now in force.

But it is said that there is no proof that Mildred Cryer was a *feme covert* at the time her right accrued. This is a shere quibble. It is admitted that " the said Mildred Cryer was " his (George Duty's) sister, and at the time of the death of " the said George, and ever since, has resided at her present " place of residence in the State of Arkansas, and that she is " the wife of Morgan Cryer." What is the fair and legitimate intendment of this, but that she was, as Mildred Cryer, the sister of George Duty, and at the time of his death resided where she still resides, under the same name, with her husband. The objection is not worthy of argument.

The five years statute which is invoked, has no applicability. I confess myself unable to comprehend its force and effect in any case where there is neither proof of registration of the deed under which the party claims, nor of the period of actual possession, and in this case there is neither.

There is no effort made to defend against the appellants' claim, upon the decree of the Probate Court of Bastrop coun-

ty, except by citing the case of Grignon's lessee v. Astor, 2 Howard, 319, which would be quite as much in point in any other case in this Court as in this; and upon this subject, in addition to the authorities heretofore cited, the case which I now cite is in every particular precisely in point: 8 La. R. 231, Benoit v. Benoit's heirs.

*R. Green*, for appellees, in reply. In this case the five years statute of limitation had operated, and vested the title to the land, in the appellees. The decree under which they derive their title, negatives the heirship of the plaintiffs, and by its publicity as a public record and judicial proceeding, created adverse possession, even against tenants in common. (3 How. R. 674, 679.)

But the plaintiffs contend that the plaintiff Mildred Cryer, was a *feme covert* at the time of the commencement of this suit. But there is no allegation in the pleadings, and no evidence in the statement of facts, that Mrs. Cryer was married at the time of this partition. That such allegation and proof was necessary, a moment's consideration will show; for if the statute of limitations had commenced running, the subsequent marriage of the plaintiff would not stop it.

HEMPHILL, Ch. J.　George Duty, a citizen of the Republic of Texas, departed this life, in the fall of 1837, leaving, as a portion of his estate, three-fourths of a league of land lying in the county of Fayette, and as his heirs, several brothers and sisters and their descendants, among whom was his sister Mildred Cryer, wife of Morgan Cryer, then and now residing in the State of Arkansas. In the year 1839, this land was, by decree of the Probate Court of Bastrop county, divided among the other heirs of the said deceased; no part of the same being assigned to the said Mildred; nor was she recognized as one of the heirs of the deceased. Some of the distributive portions of the said heirs, were sold to other parties, who took

possession of the same, made improvements, &c.; and in the year 1847, this action was commenced by the said Mildred, joined with her husband Morgan Cryer, claiming a portion of said land—and that as heir of the said George Duty, she was entitled to a partition and a distributive share of the same, as against the other heirs and their alienees. A jury being waived, and the cause having been submitted to the Court, the petition was dismissed; and the plaintiffs, by appeal, brought up the cause for revision. It cannot be seriously urged, that the decree of the Probate Court of Bastrop county, by which the other brothers and sisters, or their children, were declared the heirs of the deceased, and the estate distributed among them, can have any effect, in itself, upon the rights of Mildred Cryer, who was no party to the proceeding. For it is a well established principle, that a partition is binding upon the parties only, who are before the Court, and those whom they virtually represent. (1 Story, Eq. 656; 17 Ves. 544.)

But, inasmuch as this partition was a notorious act of ouster, the other parties claiming the whole of the land, to the exclusion of the plaintiff, it would, on general principles, as against a citizen not laboring under a disability, operate as the commencement of prescription in favor of all who held adversely, under such decree; and possession under it, accompanied with the circumstances enumerated in the statute, would ripen into a bar against a joint owner thus disseized. (3 Howard, 674, 679.)

Had Mrs. Cryer been a citizen of the Republic, and an unmarried woman, at the time of partition, the adverse possession of defendants would have barred her action; and the only question is, whether, being an alien, she is entitled, notwithstanding the ordinary bar of the general law of limitations, to assert her rights, in a judicial proceeding.

This depends on the Constitution and laws of the Republic, in relation to the alien heirs of a deceased citizen. The constitutional provision is to the effect, that if any citizen should

die intestate or otherwise, his children or heirs should inherit his estate; and aliens should have a reasonable time to take possession and dispose of the same, in the manner to be thereafter pointed out by law. The statute of 1841 (Hart. Dig. Art. 585,) declares that every alien, to whom any land may be devised or may descend, shall have nine years to become a citizen of the Republic, and take possession of such land, or shall have nine years to sell the same, before it shall be declared to be forfeited or shall escheat to the government. It appears, then, that the Constitution guaranteed a reasonable time to aliens; and with direct reference to that provision, the law has declared the time to be nine years. The period within which an alien heir must prosecute his rights, or secure his claim, has thus been fixed by special law; and we are not at liberty to look to general legislation, or laws of limitation, for rules as to the rights of aliens or heirs, but must be controlled by the limitations which the special law, touching the subject matter, has affixed.

Such being the rule, it is perfectly immaterial to the alien heir, whether the possession and acts of other joint owners be such as, under ordinary circumstances, and with reference to the citizens of the country, would be deemed consistent with, or adverse to, his rights. For whether they be the one or the other, the time within which he must become a citizen or sell the lands, is the same.

The acts of others cannot affect his rights, favorably or unfavorably; for he has nine years to secure the inheritance; and if this passes without citizenship or sale, his right to the land is lost, no matter how it is claimed, or whether it be claimed by others, at all, or not. Nor does coverture, infancy or other disability, have any effect upon the right of an alien heir. Notwithstanding these disabilities, the alien's rights must be legally asserted, within the nine years; for the law having made no exception in favor of such disabilities, none can be made by Courts of justice.

The rights of Mrs. Cryer being in no degree affected by the

possession of the defendants, however adverse this might be as against others not aliens, the statutes which give effect to such possession, are inapplicable to the case; and the only question is, whether the nine years, allowed by law, have elapsed, without citizenship or a sale of the land by Mrs. Cryer. There is no pretence that she has sold the land; and the inquiry is, Did she become a citizen in accordance with the statute?

Some question has been made, as to the date from which the time must be computed, viz: whether from the death of the intestate in 1837, or from the statute in 1841; but it will not be material to consider this point, as the view we shall take of the title of the plaintiff to citizenship, will, independent of this, be decisive of the cause. For, whether the time be computed from the death or from the Act, still nine years had not elapsed before the consummation of Annexation between Texas and the United States; and from that time, the plaintiff became virtually a citizen of Texas, and entitled to the privileges and immunities of citizenship. She was, from that time, in like manner as other citizens, authorized to hold lands. The rules which control the rights of other citizens in lands, from that time operated upon her rights; and the doctrines and rules in relation to the rights of alien heirs, their privileges, restrictions or exemptions, ceased, so far as she was concerned, to have any operation.

This position seems so clear, that comment, in support of it, is unnecessary. When the Congress of the United States, under the authority to admit new States, receives a foreign nation into the confederacy, the laws of these respective nations, in relation to the naturalization of individual emigrants, have no application to the respective citizens of each. By the very act of union, the citizens of each become citizens of the government or governments formed by this union.

The position which has been sometimes broached, that the citizens of Texas must submit to the laws of naturalization, before they can become citizens of the United States, is quite

preposterous. No such doctrine was ever admitted or applied to the citizens or inhabitants of Louisiana or Florida—countries acquired by purchase. (2 Martin, 158; 3 Martin, 733.) Much less is it applicable to the citizens of a State, which by voluntary treaty or legislation, becomes incorporated into the United States. And if the citizens of Texas cannot be deprived of their franchises, as citizens of the United States, neither can citizens of the latter be stripped of the immunities and privileges pertaining to the citizens of this State. The plaintiff, then, by virtue of citizenship, is entitled to maintain her action, or, in the language of the statute, to take possession of the land. But a short time elapsed, after she became a citizen, before she commenced her action—not sufficient to impair the force of her claim. The rights of alien heirs, as adjudicated in this case, depend altogether on special legislation. Nine years are given to acquire citizenship; and there is no intimation or ground of inference that this citizenship, when acquired, will retroact to the accrual of the right. If it did, it would be subject to all the countervailing rights and equities in others, which, in the mean time, had grown up. But, on the contrary, the period of nine years, within which the alien heir may avail himself of the benefit of the inheritance, is conceded without restriction or exception, expressed or implied. He is not even compelled to assume citizenship. He may continue an alien and sell the land. The sale could not, by possibility, retroact upon his rights; and neither could his citizenship have such effect.

The impolicy of the law, by which alien heirs, after so great a lapse of time, are permitted to assert their rights, is most manifest; but it is not in the power of Courts to afford the remedy. It is at war with our whole system of limitations, and frequently may become an engine of the greatest mischief and oppression.

Take a case like the present, for instance, where the property has been divided under the decree of a Court of competent jurisdiction, with all legal presumptions in favor of its correctness, validity, and that the rights of all the heirs have

been duly regarded.   Under the sanction of such decree, third persons, entirely ignorant of the existence of other claimants, may purchase, make extensive improvements, and the property may, by sale, deaths of owners, &c., have passed through many hands, and been subjected to many modifications, when an unknown heir, from some remote part of the world, after the lapse of many years and a laches inexcusable in a citizen, may claim that all these rights and relations between owners should be disturbed, that the peaceful and industrious homes of persons ignorant of his existence shall be violated, and that the fruits of the toils, struggles and expenditures of others should be converted, at least partly, to his aggrandizement, and to bestow on him a fortune not acquired by his own time, labor or effort, but wrung from the hard earnings, the labors and perhaps scanty means of others.

This injury and oppression might be in a great measure avoided, if alien heirs were compelled to assert their rights within the limited periods assigned to citizens, for the assertion of theirs, as against adverse possession.   But the remedy for the evil is within the power of the Legislature alone, and to their wisdom it must be left to adopt such, if any, as may be deemed necessary.   The question as to the proper mode of the distribution of this property, is not so presented, as to require or admit of much discussion.

The plaintiff has, for a long period, neglected to assert her claim ; and purchasers, under the judgment, have perhaps expended much labor, and laid out large sums in improvement of the property.   Under such circumstances, it will be perfectly competent for the Court to regulate the distribution so as to do justice between the parties ; and if any purchaser cannot have the benefit of his improvements, that he shall at least have compensation for them.   (1 Story, Eq. Sec. 655.)

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.