**WIGGINS et al. v. HOLMES et al.**
No. 997.

Court of Civil Appeals of Texas. Waco.
May 7, 1931.

Rehearing Denied June 11, 1931.

R. L. Henderson, of Waco, for appellants.

Sleeper, Boynton & Kendall, of Waco, for appellees.

ALEXANDER, J.

This suit involves the title to a tract of land in Waco, Tex., on which is located several small rent houses, which land was at the time of his death, in 1903, the separate property of Jacob Wiggins. Appellant Cicero Wiggins is a nephew of Jacob Wiggins, and he and the other appellants claim title to an undivided one-half interest in said property on the theory that Jacob Wiggins died intestate, without issue, leaving only Emma Wiggins (Holmes), his widow, surviving him, and that Cicero Wiggins is the nearest of kin. Appellees contend that Jacob Wiggins left surviving him two sons and his widow and that appellees have title to the property by reason of deeds of conveyance from said sons, and they further contend they have title by the ten-year statute of limitation. The cause was tried to a jury, and at the conclusion of the testimony the trial court instructed a verdict for appellees.

If there is any material issue of fact raised by the pleadings and proof, it was of course error for the court to give the peremptory instruction. It therefore becomes necessary for us to determine this question. Appellants contend that the issue of adverse possession and whether Jacob Wiggins left any children were each controverted issues of fact. If the evidence is undisputed that Jacob Wiggins left any children surviving him, or that the appellees have held adverse possession of the property for ten years as provided by article 5510 of the Revised Statutes, the judgment should be affirmed.

We will first discuss the question as to whether Jacob Wiggins left any children surviving him. If he left any child surviving him, then Cicero, as a nephew, inherited no interest in the land. There is evidence that he married Matilda Hamilton in December, 1868, and was divorced from her in May, 1878; that he married Frankie Durham in February, 1879, and was divorced from her in May, 1883; that he married Emma Patterson in December, 1883; and that he died in 1903 leaving the said Emma Patterson Wiggins as his surviving wife. If he left any child surviving him, it was either John Wiggins or Henry Wiggins. Jacob Wiggins was a colored man, and, on account of his many marriages, none of those who testified were intimately acquainted with his family history nor the number or names of his children. The evidence introduced to show that John and Henry were children of Jacob Wiggins consisted of the alleged declarations of Jacob Wiggins, and the circumstances surrounding their association with his family. Jacob Wiggins was engaged in the hack business in the city of Waco from 1880 to the time of his death. There was evidence that there were two boys who lived with the family, worked around the stables, and rode with

Jacob on his hack. In order to get passes over the tollbridge for his family, Jacob listed two boys as members of his family and referred to them as his sons. Some of the witnesses testified that John and Henry were the boys so referred to by Jacob as his sons. Others testified that John never lived with the family nor worked at the stables, but lived in another part of town and drove a hack for another transfer company. There was evidence that Jacob pointed to John and said that John was trying to claim kin with him since he had "gotten up in the world" and accumulated some property, but that he did not know anything about John. There was therefore a direct conflict in the evidence as to whether John was a son of Jacob, and this raised an issue of fact for the jury. With reference to whether Jacob had a son named Henry who survived him, there was evidence that Cicero Wiggins, one of the appellants, and Jake, Jr., were the two boys who lived with the family, worked around the stables, and rode on the hack with Jacob. Some of the witnesses testified that Jake, Jr., who died prior to the death of Jacob, was sometimes called "Henry." Others, who were in a position to know, testified that there was never any boy named Henry who lived with the family and that they never heard of a son by that name. There was therefore no clear nor positive evidence that Jacob had any such son. Whether or not the evidence showed that he had such a son depended on the inference to be drawn from all the facts and surrounding circumstances in evidence. Where the disposition of a case depends on an inference to be drawn from the facts or circumstances in evidence, or the facts sought to be established are not shown by evidence with such certainty that reasonable minds cannot differ as to the effect thereof, the trial court should not peremptorily instruct the jury thereon, but the case should be left to the jury for determination. Stooksbury v. Swan, 85 Tex. 563, 571, 22 S. W. 963; Early-Foster Co. v. W. F. Klump & Co. (Tex. Civ. App.) 229 S. W. 1015, pages 1019, 1023; Texas Life Ins. Co. v. Legg (Tex. Civ. App.) 229 S. W. 587; Boone v. City of Stephenville, 37 S.W.(2d) 842, decided by this court April 2, 1931, and cases cited in Gulf, C. & S. F. Ry. Co. v. Coffman (Tex. Civ. App.) 11 S.W.(2d) 631, pages 641, 642.

Appellants further contend that the evidence shows as a matter of law that they and those under whom they claim have had adverse possession of the property for more than ten years, and that by reason thereof the trial court was justified in giving the instructed verdict in their favor. The property involved in this appeal was the separate property of Jacob Wiggins and was occupied by him as his homestead until his death in

1903. In 1905 Emma Wiggins, his widow, married L. J. Holmes. In April, 1906, one John Wiggins filed a suit in the district court of McLennan county against Emma Wiggins Holmes and her husband, claiming that he was the son of Jacob Wiggins by a former marriage, and by reason thereof was entitled to one-half of the community property and all of the separate property of Jacob Wiggins. The jury in said cause found that John Wiggins was a son of Jacob Wiggins and awarded him one-half of the community property and all of the property involved in this appeal, subject to a one-third interest for life in Emma Wiggins Holmes and her right to occupy same during her life as a homestead. In December, 1906, Emma Wiggins Holmes purchased from John Wiggins all of his interest in the property as awarded to him under the judgment. She also secured from Henry Wiggins a deed to all his interest in the property. About 1908 Emma Holmes and her husband abandoned the property as their homestead, but continued to collect the rents and to pay the taxes thereon to the time of her death in 1926. The evidence of her occupancy of the property was sufficient to establish limitation as against a stranger, but the question is: Was it sufficient as a matter of law to show limitation against her cotenant, Cicero Wiggins? (Of course, whether Cicero Wiggins owned any interest in the land depended on the question as to whether Jacob Wiggins left any children surviving him. Since we have decided that this was a question of fact to be determined by the jury, we will assume, for the purpose of discussing the question of limitation, that Cicero Wiggins owned an interest in the land and was a cotenant with Emma Holmes.) Emma Wiggins (Holmes) as the surviving wife of Jacob Wiggins at all times, both before and after the judgment in favor of John Wiggins against her, owned an undivided interest in the property. As such surviving wife, she held a homestead interest, with the right of occupancy, in the whole of the land. If Jacob Wiggins left no children, she owned a one-half interest in fee in the property. If he left children, she owned a life estate in one-third of the property and a homestead interest in the whole thereof. Under the judgment in favor of John Wiggins, she was decreed a homestead interest in the whole of the property with a life estate in one-third thereof. She was therefore at all times a co-owner of the property. Occupancy by her as such co-owner was not therefore necessarily adverse to her cotenant, Cicero Wiggins. In order for one cotenant to assert the running of the statute of limitation in his favor against his cotenant, there must not only be an exclusive occupancy of the property under an adverse claim, but notice of such hostile adverse claim must in some way be brought home to the other cotenant. His occupancy even of the whole of the property will be presumed to be in recognition of the common title unless and until notice of his adverse claim is brought either to the direct attention of his cotenant or unless his acts are of such unequivocal notoriety as that the other cotenant will be presumed to have notice of such adverse holding. Long v. McCoy (Tex. Civ. App.) 294 S. W. 633, 637; McCoy v. Long (Tex. Com. App.) 15 S.W.(2d) 234; Arrington v. McDaniel (Tex. Com. App.) 14 S.W.(2d) 1009, 1012; Liddell v. Gordon (Tex. Com. App.) 254 S. W. 1098, 1100; Stiles v. Hawkins (Tex. Com. App.) 207 S. W. 89, 95; Phillipson v. Flynn, 83 Tex. 580, 19 S. W. 136; Crump v. Andress (Tex. Com. App.) 278 S. W. 422, par. 2.

The appellees insist that even if it be conceded that John Wiggins was not a son of Jacob Wiggins and did not own any interest in the property, since he actually recovered judgment against Emma Holmes for an undivided interest in the property with an order of partition thereof and afterwards deeded the interest so recovered by him in the property to Emma Holmes, this in itself was, as a matter of law, such an overt act as to start limitation in her favor as against her cotenant, Cicero Wiggins. Cicero Wiggins was not a party to the judgment in the partition suit brought by John Wiggins, and of course he was not bound thereby. It has been held that where some of the cotenants file suit and bring about a partition of the property in kind among themselves, ignoring other cotenants, and possession is taken under the decree of partition, such partition of the property is such an overt act as will as a matter of law start the running of the statute of limitation against the cotenant whose rights are ignored thereby. Cryer v. Andrews, 11 Tex. 170; Clymer v. Dawkins, 3 How. 674; 11 L. Ed. 778; Honea v. Arledge, 56 Tex. Civ. App. 296, 120 S. W. 508, 510. It will be noted, however, that in each of the above cases, the parties to the partition suit not only recovered a judgment determining the extent of the interest of each of the parties in the property, but they procured an order of the court partitioning the whole of the property in kind and each of such parties was awarded the fee simple title to the respective tract set aside to him and he took exclusive possession of the tract so awarded to him. In the partition suit between John Wiggins and Emma Wiggins Holmes there was never in fact a partition of the property. John Wiggins recovered a judgment awarding to him an undivided interest in it, but the judgment was never carried into effect and the property was never partitioned in kind. Neither party to that suit took exclusive possession of any part of the land by virtue of a partition decree. In fact, John Wiggins never went into posses-

sion and Emma Wiggins Holmes was never ousted of the original possession held by her. Before the partition decree was executed, John Wiggins deeded his interest to Emma Wiggins Holmes.

 There is a marked difference so far as notoriety of adverse claim is concerned, where land is partitioned in kind and each party takes exclusive possession of the tract so set apart to him, on the one hand, and, on the other, where a party recovers judgment for a part of the whole of the land, but before the cotenant is evicted, deeds the land to the cotenant in possession. Where a stranger asserts a superior title to the property and the tenant in possession is evicted, such tenant may then acquire the outstanding title for his exclusive benefit, for in such case the relation of cotenants has been dissolved. Bush v. Bush (Tex. Civ. App.) 275 S. W. 1096, par. 1; 7 R. C. L. 861; 38 Cyc. 44. But where the tenant in possession, and without being evicted, purchases an outstanding title, he is presumed to have purchased it for ¡the mutual benefit of himself and his cotenant. Roberts v. Thorn, 25 Tex. 728, 78 Am. Dec. 552; Hacker v. Hacker (Tex. Civ. App.) 4 S.W.(2d) 218, par. 2; Johnston v. Johnston (Tex. Civ. App.) 204 S. W. 469; 7 R. C. L. 857; 38 Cyc. 40; 11 Tex. Jur. 453. Since Emma Holmes was never evicted from the possession of any part of the property under the decree in favor of John Wiggins, it will be presumed that she purchased his outstanding title for the benefit of herself and her cotenant, Cicero Wiggins, and not in derogation of the claim of Cicero Wiggins. Notwithstanding the decree in favor of John Wiggins, she was never defeated in her claim to a life estate in one-third of the property nor denied the right to occupy the whole of the property as a homestead. Therefore, the fact that she remained in possession of the property was not inconsistent with the claim of Cicero Wiggins. If at any time thereafter Cicero Wiggins had found her in possession of the property, there would have been no occasion for alarm for she was the very person whom he should have expected to find in possession of it. The fact that John Wiggins recovered a judgment against Emma Holmes for an undivided interest in the land with an order of partition, and that she afterwards purchased such interest, was not such an overt act as would, as a matter of law, start the running of limitation in her favor against her cotenant, Cicero Wiggins, where such judgment was never carried into effect and the property partitioned in kind.

Neither was the execution and recording of the deeds from John Wiggins and from Henry Wiggins to Emma Holmes sufficient, as a matter of law, to start the running of the statute of limitation in her favor. The taking and recording of a deed by one cotenant to a part or the whole of the property either from another cotenant or from a stranger is not conclusive evidence of an adverse claim. Long v. McCoy (Tex. Civ. App.) 294 S. W. 633, 637; McCoy v. Long (Tex. Com. App.) 15 S.W.(2d) 234; Arrington v. McDaniel (Tex. Com. App.) 14 S.W.(2d) 1009, 1012, par. 10; Towery v. Henderson, 60 Tex. 291; Lynch v. Lynch (Tex. Civ. App.) 130 S. W. 461 (writ ref.); Liddell v. Gordon (Tex. Com. App.) 254 S. W. 1098.

 The question of whether the holding of one tenant in common under such a deed is, under the circumstances, adverse to other tenants in common, is usually one of fact for the jury. Long v. McCoy (Tex. Civ. App.) 294 S. W. 633, 637, par. 7; McCoy v. Long (Tex. Com. App.) 15 S.W.(2d) 1009, 1012: 7 R. C. L. 854; Martinez v. Bruni (Tex. Com. App.) 235 S. W. 549, 551; Id. (Tex. Civ. App.) 216 S. W. 655, 663. Under the circumstances of this case, it was a question of fact for the jury as to whether the taking of the judgment by John Wiggins and the taking and recording of the deeds from him and Henry Wiggins to Emma Holmes, and the circumstances surrounding her adverse claim of the ownership of the property, were of such notoriety as to put Cicero Wiggins on notice of her claim. The trial court should have submitted the case to the jury instead of giving an instructed verdict for the plaintiff.

 The appellants complain of the action of the court in refusing to allow Cicero Wiggins to testify to a conversation between himself and Jacob Wiggins in which Jacob Wiggins told him not to disturb Emma Wiggins in her possession of the property in question so long as she lived. The evidence was offered for the alleged purpose of explaining his long delay in filing this suit, but its real effect was to impute to Jacob Wiggins a recognition of Cicero Wiggins as an heir to his estate. It could be construed to mean that Jacob Wiggins recognized that he had no children and that Cicero would own an interest in the property at his death. Cicero Wiggins was a party to the suit and was claiming the property as an heir of Jacob Wiggins. The appellees were likewise claiming the property as an heir and successor in title of Jacob Wiggins. The evidence related to a statement by the deceased, Jacob Wiggins, and was therefore inadmissible. Revised Statutes, article 3716; Peil v. Warren (Tex. Civ. App.) 187 S. W. 1052; Smith's Heirs v. Hirsch (Tex. Civ. App.) 197 S. W. 754, 762, par. 5; Dodson v. Watson (Tex. Civ. App.) 225 S. W. 586.

 The appellees in their petition set up the judgment recovered by John Wiggins against Emma Wiggins Holmes and upon the trial of the case introduced same in evidence. The appellants excepted to the allegations in the petition setting up the judgment and ob-

jected to its introduction in evidence. As before stated, after John Wiggins recovered the judgment against Emma Wiggins Holmes, he executed to her a deed to his interest so recovered in the property. The appellees were entitled to plead and prove these facts as circumstances showing her adverse claim and the notoriety thereof. The trial court did not err in overruling the exception nor in admitting the judgment in evidence.

The appellants by their fifth and ninth propositions raised more serious questions. The appellees were permitted, over the objection of the appellants, to allege in their petition and to prove that in the suit between John Wiggins and Emma Holmes the issue was whether or not John Wiggins was a son of Jacob Wiggins, and that the jury in that case found that he was a son of Jacob Wiggins. Whether John Wiggins was in fact a son of Jacob Wiggins was one of the main issues in the case on trial. As before stated, it was proper to allow appellees to show that John Wiggins recovered a judgment for an interest in the property and that he afterwards conveyed same to Emma Holmes. This was admissible to show the notoriety of her adverse claim and to raise a presumption of notice thereof to Cicero Wiggins. It was also proper for appellees to allege and prove that John Wiggins was a son of Jacob Wiggins in order to connect the title which Emma Holmes afterwards acquired from him with the common source of title. Hamman v. Presswood (Tex. Civ. App.) 120 S. W. 1052. It served no useful purpose, however, for the plaintiff to allege and prove that the very issue involved in this case, that is, whether John Wiggins was a son of Jacob Wiggins, had been tried in the former case, to which appellants were not parties, and decided favorably to the appellees. The fact that another jury had theretofore in another case determined the very question at issue in the case on trial would have had a strong tendency to induce the jury in the latter case to reach the same conclusion and would therefore have been very prejudicial. While a trained lawyer would understand that the verdict of the jury in the former case, to which Cicero Wiggins was not a party, should have no weight in deciding the same issues in the case on trial between different parties, the average juror would not ordinarily be able to maintain the distinction. Millers' Indemnity Underwriters v. Hughes (Tex. Civ. App.) 256 S. W. 334, par. 2; Kelley v. Fain (Tex. Civ. App.) 168 S. W. 869; Texas Employers' Ins. Ass'n v. Pierce (Tex. Civ. App.) 230 S. W. 872, par. 2; Texas Employers' Ins. Ass'n v. Nunamaker (Tex. Civ. App.) 267 S. W. 749, par. 3; Ocean Accident & Guarantee Corporation v. McCall (Tex. Civ. App.) 25 S.W.(2d) 653, par. 4; Maryland Casualty Co. v. Marshall (Tex. Civ. App.) 14 S.W.(2d) 337, par. 5; Farris v. U. S. F. & G. Co. (Tex. Civ. App.) 251

S. W. 612, par. 6; Texas Employers' Ins. Ass'n v. Downing (Tex. Civ. App.) 218 S. W. 112, par. 12; Georgia Casualty Co. v. Darnell (Tex. Civ. App.) 243 S. W. 579, par. 6. Upon another trial, such allegations should be stricken from the pleadings and the evidence supporting the same excluded.

The other assignments of error are without merit.

It appears that this suit involves several tracts of land, but that appellants have disclaimed as to all of said property except the lots on the northeast side of North Third street in the city of Waco, which is the only property involved in this appeal.

The judgment of the trial court in favor of the plaintiffs against all defendants as to all of said land except that involved in this appeal is affirmed. The judgment of the trial court in favor of the plaintiffs for the title and possession of the land involved in this appeal is reversed, and the cause is remanded for a new trial.

BARCUS, J. (dissenting).

I regret my inability to agree with the opinion of my associates in this case.

Admittedly, the only property involved is the separate estate of Jacob Wiggins which he owned at the time he married Emma in 1883. The only claim appellants have to the property is necessarily contingent on the fact that when Jacob Wiggins died he did not leave any surviving children, and the burden of proof was on appellants to establish said fact. Under the law of descent and distribution, if Jacob Wiggins left no surviving children, his wife, Emma, inherited one-half of the real estate involved, and appellant Cicero Wiggins, his nephew, the remaining half. If Jacob Wiggins left any surviving child or children, Emma Wiggins, the surviving wife, would have inherited a life estate in a one-third interest therein with her right to occupy the premises as her homestead.

The record shows without dispute that Jacob Wiggins married Matilda Hamilton in December, 1868, and was divorced from her in May, 1878; that he married Frankie Durham in February, 1879, and was divorced from her in May, 1883; that he married Emma Patterson in December, 1883; and that he died in 1903, leaving Emma as his surviving wife. In 1905 Emma Wiggins married L. J. Holmes. In April, 1906, John Wiggins filed suit in the district court of McLennan county against Emma Wiggins Holmes and her husband, claiming that he was a son of Jacob Wiggins by a former marriage and by reason thereof was entitled to the property in controversy in this suit, subject to Emma's life estate in one-third thereof and her right to occupy same as a homestead. Judgment was rendered in said cause in favor of John

Wiggins establishing the fact that he was Jacob Wiggins' son and awarding him all of said property subject to Emma's one-third life estate and her homestead rights. After said judgment became a finality, Emma Wiggins Holmes in 1906 purchased from John all of his interest in the property in controversy.

In June, 1906, Emma Wiggins Holmes purchased from Henry Wiggins, who claimed to be a son of Jacob Wiggins, all the interest he had in said property. About 1908 Emma Wiggins Holmes and her husband abandoned the property as their homestead and established their home in another portion of the city where she continued to live until her death in 1926. After she abandoned same, she continued to pay taxes on the property and collected the rents and made some improvements, the property having a fifty-foot frontage and running back 165 feet and had at all times from three to seven small negro rent houses on it.

Under the above undisputed facts, I think the trial court was authorized to instruct the jury to return a verdict for appellants on the question of limitation. The suit by John Wiggins in 1906 established the fact that he was a son of Jacob Wiggins, deceased. While that judgment is not necessarily binding upon Cicero Wiggins, it was of such a notorious character that he was charged with notice thereof, and the recovery by him of said property in said suit and the deed by him to Emma Holmes was sufficient to start the running of limitation in her favor. When John Wiggins recovered the property from Emma Holmes, it dissolved any possible cotenancy between her and Cicero Wiggins, and in order for her to hold possession of said property she was required to and did purchase same from the then record judgment holder, John Wiggins. She thereafter purchased the title claimed by Henry Wiggins as a son of Jacob Wiggins. In 1908 she abandoned the property as a homestead and for almost twenty years held possession thereof under said titles, collecting rents, paying taxes, and openly and notoriously claiming the entire property by virtue of said judgment and deeds of conveyance. Cryer v. Andrews, 11 Tex. 170; Honea v. Arledge, 56 Tex. Civ. App. 296, 120 S. W. 508 (error ref.); Bush v. Bush (Tex. Civ. App.) 275 S. W. 1096; 7 R. C. L. 861.

In Cryer v. Andrews, supra, it appears that after the death of George Duty, certain of his brothers and sisters had his estate divided by the probate court without recognizing the interest of one sister, Mildred Cryer. Thereafter she brought suit for her portion. The Supreme Court, speaking through Chief Justice Hemphill, said: "Inasmuch as this partition was a notorious act of ouster, the other parties claiming the whole of the land, to the exclusion of the plaintiff, [Mildred Cryer] it would, on general principles, as against a citizen not laboring under a disability, operate as the commencement of prescription in favor of all who held adversely, under such decree; and possession under it, accompanied with the circumstances enumerated in the statute, would ripen into a bar against a joint owner thus disseized." And the court held that the title obtained by the brothers and sisters, who had the partition made without naming their sister, had ripened in their favor into a limitation title. The same doctrine was again expressed in Honea v. Arledge, supra. The authorities seem to be uniform that a suit in a court of competent jurisdiction between adverse claimants of land is such a notorious act of ouster that a judgment rendered is sufficient to begin the running of the statute of limitation against all parties and that possession under and by virtue of same by one of the parties to the suit will ripen into a title by limitation.

If it could be said that the ouster suit brought by John Wiggins against Emma Wiggins Holmes was not such a notorious act as to start the running of limitation, it was sufficient to put Cicero Wiggins on notice that any possible cotenancy between him and Emma Wiggins Holmes had been thereby dissolved. If said judgment did dissolve the cotenancy between Cicero Wiggins and Emma Wiggins Holmes, or if it was sufficient to put him on notice of said fact, then she was authorized to and had the right to purchase the outstanding title from John Wiggins the same as any other person, and the title so purchased inured to her individually. Bush v. Bush (Tex. Civ. App.) 275 S. W. 1096, and authorities there cited.

In 7 R. C. L. 861 it is stated: "After a cotenancy is actually dissolved, there is nothing in the law which forbids a former tenant in common from acquiring the entire property. He then has the same rights as any other person." The mere fact that Emma Wiggins Holmes did not wait until she was actually evicted from possession before she purchased the title that had been awarded John Wiggins, I think does not defeat her right to purchase said outstanding title. The record shows without controversy that Emma Holmes did in 1908 actually abandon the occupancy of the property as a residence and for almost twenty years has openly and notoriously collected the rents therefrom and paid the taxes thereon under and by virtue of the title she purchased from John and Henry Wiggins, and that Cicero Wiggins, although living in Waco and seeing Emma Holmes frequently and knowing that she was renting the property, made no claim to any part thereof.

I am further of the opinion that the judgment of the trial court was correct on the theory that it was shown without controversy that Henry Wiggins was the son of Jacob

Wiggins and was living at the time Jacob Wiggins died. It is, of course, the recognized rule of evidence that pedigree and relationship and marriage may be proven by hearsay evidence. Article 3713, Revised Statutes, and rule of evidence No. 35 thereunder.

E. D. Russell testified that he began collecting toll on the suspension bridge in Waco in 1884 and kept that position for six years, and that he personally knew both John and Henry Wiggins and that Jacob Wiggins told him that he had two boys and that John and Henry were his boys and members of his family. Mr. Russell testified that on several occasions Jacob Wiggins told him that both John and Henry were his sons. The evidence shows without dispute that when this cause was tried John was dead and Henry Wiggins lived in Houston.

L. J. Holmes testified that both John and Henry Wiggins addressed Jacob Wiggins as "papa" and that Jacob Wiggins said they were his sons, and he further testified that John and Henry Wiggins lived with their father, Jacob Wiggins, and that Jacob Wiggins claimed that John and Henry were his lawful children.

Jackson Moseley testified that he personally knew John and Henry Wiggins and that he heard Jacob Wiggins say that they were his boys.

While there were some witnesses who testified that they heard Jacob Wiggins say that John was not his son, there was not a single witness who testified that they at any time heard Jacob Wiggins deny or even suggest that Henry was not his son. Neither was there a witness who testified that he ever heard Jacob Wiggins say he did not have any living children. Since family relationship can admittedly be established by hearsay, it occurs to me that the testimony of the witnesses Russell, Holmes, and Moseley is sufficient to establish as a matter of law that Henry was the son of Jacob Wiggins.

I am further of the opinion that there was no error in the action of the trial court in instructing the jury to return a verdict against appellants for the reason that, before appellants could recover, it was necessary for them to offer some evidence tending to show that Jacob Wiggins died without issue. Unquestionably, appellees had title by limitation if Jacob Wiggins did leave children, and it is further unquestionably true that if Jacob Wiggins left children, appellants were not in any event entitled to recover. It was therefore incumbent upon appellants to offer some proof tending to show that Jacob Wiggins did not leave any living children. There was not a single witness who testified that Jacob Wiggins did not leave children; neither was there any witness who testified that

Jacob Wiggins at any time or under any condition told them or suggested to them that he did not have children. The record shows without dispute that he married first in 1868; that he had three wives and that he died in 1903. Before the trial court was authorized to submit the issue as to whether Jacob Wiggins died without leaving issue, the burden was on appellants and it was imperative that they offer evidence to support said issue. It is to me a strange doctrine to hold that the trial court was required to submit to the jury the issue as to whether Jacob Wiggins left any children when there was no evidence tending to show that he died without issue.

For the reasons given, I think the judgment of the trial court should be affirmed.