### F. M. Honea v. W. L. Arledge et al.

Decided June 3, 1909.

**1.—Limitation—Cotenants—Possession—Trust Relatior.**

Where a surviving husband continued in possession of community real estate till his death by consent of the heirs, the trust relation attaching to his possession did not attach to that of an heir who, residing on the land with the father during his life, after his death occupied a specific part of the land as his by inheritance and partition, holding same adversely to another of the heirs.

**2.—Same—Charge.**

A surviving husband, by consent of the children, heirs of the wife, occupied the community real property during his life. On his death a judgment partitioning the land between the heirs was had and they took and held possession of their specific allotments adversely to the claim of one of them whose rights were ignored in and who was not a party to the partition. Limitation ran in their favor against such dispossessed heir. Charge held to properly submit this issue.

**3.—Limitation—Cotenant—Disseisin—Partition.**

Heirs of a decedent, having obtained partition of his lands among them by decree of court, took possession of, held, improved and paid taxes on their several allotments for more than ten years. Held, that such possession was property treated as a disseisin, as matter of law, of a cotenant having an interest in the land by inheritance, who was not made a party to the partition proceedings and whose rights were ignored therein; and that the court properly refused an instruction as to the necessity of notice to a cotenant that the possession is held adversely to him and the presumption that the holding by one part owner is not adverse to his cotenant.

Appeal from the District Court of Fannin County. Tried below before Hon. Ben H. Denton.

*McGrady & McMahon*, for appellant.—For the possession of a tenant in common to be adverse to his cotenant, where they derive

their title and possession from an immediate common ancestor, such possessor must give actual notice to the other joint owner that he holds adversely; or his possession must be of such a nature and so notorious as that it will be presumed that the tenant out of possession knew of the adverse holding. Neither the payment of taxes nor acts of ownership by the tenant in possession which are legitimately referrable to and consistent with the rights of a joint owner will be considered notice of a hostile claim. Moody v. Butler, 63 Texas, 210; Phillipson v. Flynn, 83 Texas, 580; Clemons v. Clemons, 45 S. W., 199; Newcomb v. Cox, 27 Texas Civ. App., 583; Madison v. Matthews, 66 S. W., 802; House v. Williams, 16 Texas Civ. App., 122; Garcia v. Illg, 37 S. W., 471; Inglis v. Webb, 23 So., 125; Cocks v. Simmons, 17 S. W., 594; Sontag v. Bigelow, 31 N. E., 674; Sorenson v. Davis, 49 N. W., 1004; Buchanan v. King, 23 Gratt., 414.

The charge was error in that it ignored the trust theory of the case, especially as between plaintiff and defendants, W. L. and A. J. Arledge in this: The land was community property of Wm. Arledge and wife. After she died it was agreed among Wm. Arledge and her children, who were also his children, viz.: wife of plaintiff, W. L. Arledge and A. J. Arledge that Wm. Arledge hold all the property and no division be had till after his death. Plaintiff inherited by death of his wife before Wm. Arledge died, and at his death W. L. and A. J. were in possession with him. Under such circumstances the act of A. J. and W. L. in effecting a void partition proceeding of which plaintiff had no knowledge did not as a matter of law put the statute of limitation running in their favor against plaintiff, as plaintiff had no knowledge of any adverse holding.

*E. L. Agnew* and *Thurmond & Steger,* for appellees.—A partition by judicial proceeding among several tenants in common claiming the whole estate, to the exclusion of others, is a notorious act of ouster; and the statute of limitations begins to run immediately in favor of those who are in possession under the decree, against all who are not laboring under disability. Cryer v. Andrews, 11 Texas, 170; 3 Howard (U. S.), 674-679.

Had the court charged as requested by appellant the verdict could not have been different from what it was. Puckett v. McDaniel, 8 Texas Civ. App., 634; Stubblefield v. Hanson, 16 Texas Ct. Rep., 36.

HODGES, ASSOCIATE JUSTICE.—Appellant instituted this suit in January, 1908, for partition, claiming that he owned an undivided one-sixth interest in four tracts of land situated in Fannin County, aggregating 370 acres, and that the appellees owned the remainder. Appellees, among other defenses, pleaded a general denial and limitation of five and ten years. The land in controversy belonged to the community estate of Wm. Arledge and wife, both deceased. The appellees, defendants below, are the heirs and purchasers from the heirs of Wm. Arledge and wife. The appellant, who claims by inheritance through his deceased child, married a daughter of Arledge. Mrs. Arledge died about the year 1876, leaving her husband surviving and in possession of the community property. Also several children. The wife of ap-

pellant died in 1881, leaving a child who survived her, according to his testimony, only a few days. Wm. Arledge died about the year 1894. After the death of his wife Arledge continued in the use and possession of the community property till the date of his death. This appears to have been done as the result of an agreement on the part of his children. The year after the death of Wm. Arledge his surviving children and grandchildren, by a proceeding instituted in the District Court of Fannin County, had a partition made of the Arledge estate among themselves. The appellant was not a party to this proceeding, and his claim of an interest in the estate was ignored by those heirs who were parties. After the partition was made the adult owners took immediate possession of their respective portions as allotted in the partition, made improvements and paid taxes thereon; and that set apart to the minors was taken possession of by their guardian, improved and taxes paid on the same. The testimony shows that the possession thus taken was continued either by the original owners or by their purchasers, without interruption till the institution of this suit, as to all of the land except 20 acres. After the death of his wife and child the appellant lived in different parts of the State, remaining at some places several years and at others only a few months, but did not in the interval between the death of his wife and the filing of this suit live in Fannin County. He testifies that he knew nothing of the death of Wm. Arledge till about two years before instituting this suit, and was until then ignorant of the fact that any division had been made of the estate. From a judgment awarding him a one-eighth interest in twenty acres of the land appellant has appealed.

The right of the appellant to recover any or all of the land sued for in the court below depended solely upon whether he was barred by the statute of limitation as pleaded by the defendants, and the court so instructed the jury. The manner in which the issue of limitation was submitted, and the failure and refusal of the court to submit what the appellant claims were proper instructions applicable to the claim of adverse possession by one tenant in common against another joint owner, formed the basis of the different assignments of error presented in the record. After instructing the jury concerning the periods of limitation pleaded, what was essential to constitute peaceable and adverse possession generally, and the necessity of continuity of possession by different owners claiming in privity with each other, the court then charged the jury as follows: "If you believe from the evidence that any or all the defendants and those under whom they claim took possession of the respective tract or tracts claimed by them respectively under the decree of partition offered in evidence, and had prior to January 22, 1908, had and held peaceable, adverse and continuous possession of such tract or tracts so claimed by them respectively, cultivating, using and enjoying same for a period of ten years, then plaintiff is barred from recovery by the ten years statute of limitation, and if you should so find you will return a verdict for defendants, or such of them as you find had such possession." This portion of the charge is assailed as erroneous because it ignores what the appellant terms the "trust theory of the relation" between him and the appellees W. L.

and A. J. Arledge, in this: The land was the community property of Wm. Arledge and wife. The interest claimed by the appellant was by inheritance through his wife before the death of her mother, the wife of Wm. Arledge. After the death of Mrs. Arledge it was agreed that Wm. Arledge should remain in possession holding the property during his lifetime, and no division should be made among the heirs till after his death. The evidence shows that at the time of the death of Wm. Arledge, W. L. and A. J. Arledge were occupying portions of the premises with their father, and presumptively by his permission. It is claimed that this status created a trust relation between W. L. and A. J. Arledge on the one part and the appellant on the other part with reference to the holding of the possession, and would prevent a void partition, as a matter of law, from operating to put in motion the statute of limitation against the appellant. The testimony shows that at the time, and for some years previous to the death of Wm. Arledge, A. J. Arledge was occupying the homestead with his father, keeping house for him and looking after his personal welfare. It is also in evidence that W. L. Arledge resided upon a part of the 200 acres which constituted the family homestead of Wm. Arledge. The agreement for Wm. Arledge to remain in possession seems to have been made about the time of the death of his wife, or shortly thereafter, and was strictly observed by all the heirs having an interest in the land. Wm. Arledge occupied the family homestead and used all the community property and lands, so far as the latter were used, up to the time of his death. We do not think this is sufficient to show a trust relation existing between the appellant on the one side and the appellees, W. L. and A. J. Arledge, upon the other, as to possession of the land. The trust, if any had been created, was a personal one undertaken by Wm. Arledge, and existed only during his lifetime. It expired with his death, by the very terms of the agreement. After that event the heirs-at-law had a right to a partition of the entire property, and no obligation rested upon W. L. and A. J. Arledge binding them to continue their father's possession with the same trust relation assumed by him. They had a perfect right to institute partition proceedings for the division of the common property, or to occupy it as joint owners. They did not assume any special trust by reason of being on the land by permission of their father at the time of his death. They were occupying that portion of the land which he had a right to hold regardless of any agreement—the family homestead. We do not think the charge is subject to the objection made. Neither do we think it is subject to the further objection that it was not warranted by the testimony. The evidence, we think, was ample to require the court to submit the issue of adverse possession by all the plaintiffs, as he did.

The appellant also complains that the court erred in refusing to give the following special charge: "One joint owner of a tract of land has a right to enter upon and possess the common property, and such act does not ordinarily make such possession adverse to the other owner. Nor would the fact that such joint owner in possession paid the taxes on the land, or improved it, render his possession adverse to the other joint owner. In order for such possession to be adverse,

such as would put the statute of limitation in operation, the tenant in possession must give actual notice to the other joint owner that such possession is held adversely; or the possession must have been of such a nature so notorious, and the surrounding circumstances must have been such as that the joint owner out of possession must be presumed to have known of the adverse holding. Therefore, before you can find that defendants W. L. Arledge, A. J. Arledge, W. H. Barnett and wife Hattie Barnett, or either of them, or other defendants claiming under them, have title by limitation against plaintiff, you must believe from the evidence that as far back as ten years prior to the institution of this suit his or their acts and possession were of such an adverse and notorious nature, and so hostile to plaintiff, that it must be presumed that plaintiff had notice of such hostile claim. In this connection you are further instructed that the doing of any acts by a cotenant which may be legitimately referred to and consistent with his right as a joint owner to do, will not be considered as a hostile act or as notice of an adverse possession to the other joint owner not in possession." The request for this special charge is based upon the contention that the court failed to instruct the jury concerning the rules of law applicable to claims by adverse possession when urged by one tenant in common against another. The partition of the estate of Wm. Arledge and wife among the surviving children and grandchildren upon his death, in which proceeding the appellant was ignored, is a fact about which there is no dispute in the record. This proceeding, by its publicity and nature, was so notorious and adverse that it was sufficient to constitute an ouster of the appellant; and the court had the right to assume as a matter of law that a disseizin was thereby accomplished, which, if followed by the necessary adverse holding, and for the statutory period, in the manner essential to constitute a bar, would ripen into a title by limitation. Cryer v. Andrews, 11 Texas, 170; The Lessee of Clymer v. Dawkins, 3 Howard, 674; Brewer v. Keeler, 42 Ark., 289; Puckett v. McDaniel, 8 Texas Civ. App., 634, 28 S. W., 360; Wood on Limitation, sec. 266. In the Clymer case above cited the court said: "In our judgment, it was wholly unnecessary to decide whether those proceedings were absolutely void or not. For, assuming them to have been defective or invalid, still, as they were matters of public notoriety of which Clymer was bound at his peril to take notice, and as Lynch and Blantern under those proceedings claimed exclusive title to the land assigned to them, adversely to Clymer, if the defendants entered under the exclusive title the possession must be deemed adverse, in point of law, to that of Clymer " The elements constituting an adverse possession sufficient, in the course of time, to bar by limitation the right of one joint owner to recover a portion of the common property in an action against the other, are not different or more onerous than in cases where strangers only are concerned. The difference lies in the essential facts necessary to furnish evidence of the hostile or adverse holding, or, more strictly speaking, of disseizin by the adverse claimant: Gillaspie v. Osburn, 13 Am. Dec., 140, and notes. While in the case of a stranger possession alone might be ample evidence of the ouster of the true owner, and would support an action to recover title and possession, yet

in the case of tenants in common it would not be. As between the latter it would be necessary that some further evidence be shown of an intent to oust the cotenant and to assert exclusive title and ownership to the common property, in addition to mere possession, since as between cotenants the possession of one is not necessarily hostile to the other and would not put him upon notice that his title was being disputed. When, however, an overt act evidencing an unequivocal intent on the part of one joint owner to claim the entire common property to the exclusion of the other joint owner, is committed, and that act is so notorious as to reasonably convey that impression, it is then sufficient to constitute in law an ouster, and limitation begins to run from its occurrence. Coogler v. Rogers, 25 Fla., 853; Gillaspie v. Osburn, 13 Am. Dec., 140, and cases cited in notes; Wood on Limitation, sec. 266; Feliz v. Feliz, 105 Calif., 1; Gregory v. Gregory, 102 Calif., 50; Wright v. Kleyla, 104 Ind., 223, 4 N. E., 16; Baird v. Baird, 21 N. C., 524, 31 Am. Dec., 399. It is difficult to conceive of an overt act more notorious in character, and more clearly indicating a purpose to appropriate the common property to the exclusion of another joint owner, than was evidenced by the partition proceedings instituted by the heirs of Wm. Arledge, and their subsequent use of their respective portions. It showed an unequivocal intent upon their part to ignore whatever claim the appellant may have had, and to divide up the land and use the different parts in severalty. The decree of partition was intended to have the effect of vesting in each an exclusive personal right to hold that portion allotted to him, and clearly indicated the purpose of each to so hold his portion. These acts were open and notorious, and occurred under such conditions as could not leave any room to doubt the purpose of those engaged in bringing them about. It is immaterial that the appellant was not in the vicinity of where the land was situated, and did not have actual knowledge of those proceedings. They were of such a character as he was compelled to notice at his peril. Humphreys v. Edwards, 89 Texas, 512, 36 S. W., 333; Warfield v. Lindell, 30 Mo., 272, 77 Am. Dec., 614; Laraway v. Larue, 63 Iowa, 407, 19 N. W., 244; Knowles v. Brown, 69 Iowa, 11, 28 N. W., 409. The only issue of fact so far as concerns this appeal, which the court was called upon to submit to the jury (even if he was required to submit that), was that as to whether the appellees and those under whom they claimed had held their respective tracts of land set off to them adversely through the period of limitation after the partition had been made. This was, we think, done in a manner which correctly and clearly presented that issue. Conceding that the special charge requested by the appellant and refused stated a correct rule of law applicable to cotenants, still we do not think it follows that this would have been a proper instruction to the jury. It was an abstract statement of the law, which, as applied to the facts involved, might have been misleading. Clack v. Wood, 46 S. W., 1132. For instance, it tells the jury that possession of the common property, the payment of the taxes and the making of improvements thereon by one joint owner do not ordinarily make such possession adverse to the other owner. As an abstract legal proposition this may be correct, but it by no means follows that the jury

should have been so instructed. Each of these facts was an element proper to be considered by the jury in determining whether or not the claim of adverse possession urged by the appellees had been sustained, and each was weighted with evidentiary value proper to be considered by the jury in connection with all of the testimony upon that subject. Schofield v. Douglass, 30 S. W., 817. It is the duty of the court, when the evidence is concluded, to determine whether or not it is sufficient to sustain a finding upon the issue in support of which it has been adduced. If it is not, then the jury should be peremptorily instructed on the subject. If it is sufficient, it is improper for the court to single out different portions of the evidence and tell the jury that these were not in themselves sufficient to sustain a finding. Gulf, C. & S. F. Ry. v. Box, 81 Texas, 670, 17 S. W., 375. Such conduct would be an unwarranted invasion of the province of the jury. Where the evidence is sufficient it is the duty of the court to submit the issues without indicating the probative value of any of the different facts proved and which the jury may legally consider.

We think the court correctly refused the charge requested, and the judgment is accordingly affirmed.

*Affirmed.*

Writ of error refused.