### CHRISTIANSEN v. CHRISTIANSEN et al.
#### No. 11562.

Circuit Court of Appeals, Fifth Circuit.
Jan. 22, 1947.
Rehearing March 12, 1947.

SIBLEY, Circuit Judge, dissenting.

James F. Gray and John N. Harris, Jr., both of Dallas, Texas, for appellant.

W. H. Reid, of Dallas, Texas, for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

Alfred Christiansen was the son of Gilbert and Carrie Christiansen, a brother of Annie and Josie, a nephew of Chris Christiansen, Johanna Carter, and Alette Sullivan, and husband of the plaintiff, Margaret Christiansen.

Alette Sullivan, nee Alette Christiansen, died intestate in Dallas, Texas, on the 26th of June, 1933, owning real estate in said city, one-half of which, under the statutes of Texas, went to her husband, J. A. Sullivan, and the other one-half went to her brothers and sisters or to the heirs of such as were deceased. At the time of her death her brother, Chris Christiansen, and her sister, Johanna Carter, were alive, and each inherited a one-sixth interest in her real estate. Her brother, Gilbert Christiansen, died in 1903, in Dallas, Texas, leaving a wife, Carrie Christiansen, and two children, Alfred, and Josie, residing in Astoria, Oregon. One daughter, Annie, had died in 1896, and all of his heirs, except Alfred, had died prior to the death of Alette Sullivan, by virtue of which Alfred Christiansen became, and was, the sole heir of Gilbert Christiansen and entitled to one-sixth of her real estate which his father would have inherited had he lived until after her death.

Gilbert Christiansen and Carrie married in Wisconsin but lived in South Dakota a short while and then moved to Astoria, Oregon, where they and their three children lived until Annie came to Dallas, Texas, where she died in 1896. In 1901 Gilbert Christiansen left his wife, his son, Alfred, and daughter, Josie, in Astoria and came to Dallas where he died in 1903. Chris Christiansen, defendant in the present suit, lived with his brother, Gilbert, in Astoria from 1882 until 1892, when he came to Dallas. Chris Christiansen, having lived in the home with his brother, Gilbert, knew that the family lived in Oregon, and that Alfred was about fourteen or fifteen years old at the time that he (Chris) left Astoria, and came to Dallas. Neither Carrie, Alfred, nor Josie ever resided in Texas, and Gilbert lived there only two years—1901 and 1902.

After the desertion of Carrie and her two children by Gilbert, the family moved from Astoria to Portland, Oregon, where Alfred married the plaintiff, Margaret Christiansen, on September 19, 1916. Alfred and his wife moved to Metzger, a suburb of Portland, in 1919, and lived together as husband and wife until Alfred's death, June 16, 1940. Upon his death, without issue, Margaret became the sole heir of Alfred Christiansen, and entitled to a one-sixth interest in the real estate of Alette Sullivan.

On November 15, 1933, Chris Christiansen and his sister, Johanna, filed suit for partition and accounting in the Dallas Division of the District Court of Texas against J. A. Sullivan, the surviving husband of Alette, and against Gilbert Christiansen, Carrie, Annie, Alfred, and Josie, and their unknown heirs, whose residences were all alleged to be unknown.

In their complaint it was, among other things, alleged: That the defendants, Gilbert, Carrie, Alfred, Josie, and Annie, so far as plaintiffs knew, were dead and had died intestate; that plaintiffs are "the only living heirs in the direct line of descendancy of the said deceased, Alette Sullivan, living at the present time, and that all other heirs other than the defendant, J. A. Sullivan, heretofore named herein, are deceased, and without heirs, or if with heirs, that such other defendants, together with their heirs, who are unknown, are presumed to be dead, by virtue of their absenting themselves for more than seven years successively prior to the filing of this suit."

Citation by publication was had but nowhere was the place of residence of any of the heirs of Gilbert Christiansen shown nor was any notice of pendency of the suit in anywise delivered to Alfred Christiansen, who was at that time living in Metzger and who was then the sole surviving heir of his father.

In partition suit Chris Christiansen testified that he knew Gilbert's family and that he lived with them in Astoria, but that he himself had left Astoria in 1892 and had not heard anything from them since his brother, Gilbert, came to Dallas in 1901. There was no evidence that Chris made any effort to locate them in Oregon.

Based upon Chris Christiansen's testimony and the allegation of the complaint, the Court adjudged that the heirs of Gilbert Christiansen had absented themselves from their home and residence for a period of over seven years prior to the filing of the suit and had not been heard from during that time by their family, relatives, or friends, and were presumed to be dead, and that Chris and Johanna were the sole living heirs of Gilbert Christiansen, Carrie Christiansen, Josie Christiansen, Alfred Chistiansen, and Annie Christiansen, and as such are the owners of, and entitled to, all right, title, and interest of said defendants in the real estate described other than the one-half interest of the defendant, J. A. Sullivan. This decree was entered on the 10th of March, 1934, pursuant to which commissioners were appointed and their report approved by a final decree of the Court renderd on April 3, 1934. There was no partition of the lands between Chris and Johanna, but only between them and the defendant, J. A. Sullivan.

On the 9th of September, 1936, and the 18th of September, 1940, Johanna Carter conveyed her one-half interest in all but one parcel of the property to Chris Christiansen.

On August 31, 1945, Margaret Christiansen, the widow and sole heir of Alfred Christiansen, filed the present suit against Chris Christiansen and the heirs of Johanna Carter for the purpose of recovering the one-sixth interest in the lands of Alette Sullivan which her husband, Alfred Chris-

tiansen, had inherited. She alleged that Alfred Christiansen, her husband, was alive at the time of the filing of the partition suit; that she was his lawful wife and only heir; that he had never absented himself from his home and place of residence for any substantial length of time; that he had lived in Portland, Oregon, for twenty-four years and was living in Metzger, one of its suburbs, until the time of his death, June 16, 1940; and that the allegations made by the plaintiffs in the partition suit were false and fraudulent; that the plaintiff had not discovered the fraud until on or about May 1, 1945; and that under Article 5541 of Vernon's Civil Statutes, Ann., of the State of Texas, she was entitled to have one-sixth of the land, together with the rents and profits restored to her.

At some date after the rendition of the partition decree—which date is not clearly shown—Chris Christiansen went into possession of the lands and claimed same under the decree adversely against his co-tenant, Alfred Christiansen, and his heirs, and now asserts that he is protected by the statutes of limitations of the State of Texas.

There was no dispute in the facts. The defendant, Chris Christiansen, testified in the trial in the present case that he had lived in the home of Gilbert Christiansen and his family in Astoria, Oregon; that he knew they had three children; that before filing the partition suit he made no inquiry in Oregon to try to ascertain whether any of Gilbert Christiansen's family was living or dead; that neither Alfred Christiansen, nor any of his, or Gilbert Christiansen's surviving heirs, had ever lived in the State of Texas; that he did not know whether they had ever left their place of residence at any time; that the only inquiry he made was in South Dakota at a place where Alfred Christiansen and the other heirs of Gilbert Christiansen had never lived; but that he had had no knowledge or hearing from any of the family for thirty years, and had made no effort to find them other than to make some inquiries of relatives in South Dakota.

The Court below, in the pending case, found that the defendant had been guilty of fraud, stating: "Fraud is established

as a matter of law where it appears that the next of kin of the absentee obtained the judgment pronouncing him dead when the undisputed fact shows that such next of kin knew that the absentee last lived in a particular place but made no search or inquiry there." [62 F.Supp. 341, 343.] But the lower Court was of the opinion that in Texas neither fraud nor ignorance of the existence of the fraud would prevent the statute of limitations from running in the absence of a concealment of the fraud; that mere silence and inaction were insufficient; that the evidence did not show any affirmative act upon the part of Chris Christiansen which prevented the plaintiff from discovering the fraud; that the partition decree was of record and the records were open to the plaintiff; that in order to get around the statute of limitations it was incumbent upon the plaintiff to show the exercise of reasonable diligence to discover the fraud; and that even though an heir did not know of his inheritance, the statute of limitations would run against him unless there was an active and continuing fraud that prevented him from discovering the true facts. See D.C., 62 F.Supp. 341.

■ We are of the view that the Legislature, in enacting Article 5541 [1] and Article 3292,[2] Vernon's Civil Statutes, Ann., of Texas, was undertaking to prevent the taking of property of a person on the presumption, that he was dead if, in truth, he was not, and that it enacted the statute recognizing the presumption arising from seven years' continuous absence from one's place of abode [Art. 5541] only on the condition that if it later developed that the absentee was not dead the property should be restored to him. Art. 5541 says as much. Moreover, Art. 3292 further protects the right of an absentee who is not dead by providing that "the probate of a will, or administration of an estate of a living person shall be void."

Since the passing of property of a living absentee under the probate of a will or the administration of an estate is void, consistency would seem also to require that any attempt at passing of title to property of a living absentee by any other judicial proceeding predicated upon the presumption of death under Art. 5541, the "Dead Man's Statute," should be either proscribed, or else so circumscribed or conditioned as to afford protection to an absentee later found to be alive.

In the view that we take of this case it will not be necessary for us to pass upon either: (a) The effect of the fraudulent allegations in the partition suit as to the absence of Alfred Christiansen or any other heir for seven years; or (b) the complete absence of any evidence in that suit upon which to sustain the presumption of Alfred's death.

■ We believe that Art. 5541 is sui generis and it, together with the decree procured under it, measures the nature of the possession under which Chris and Johanna took, held and possessed the one-sixth interest of Alfred.

■ It cannot be gainsaid nor overlooked that this statute was the basis upon which Chris Christiansen obtained the partition decree adjudging that Alfred Christiansen and the other heirs of all defendants except J. A. Sullivan had absented themselves from home and residence for a period of over seven years prior to the filing of the partition suit, and had not been heard of, or from, during that period of time by their family, relatives, or friends, and that they and their issue were presumed to be, and found to be, dead and that Chris Christiansen and Johanna Carter were the sole living heirs of Gilbert Christiansen and the

---

[1] "Any person absenting himself for seven years successively shall be presumed to be dead, unless proof be made that he was alive within that time; but an estate recovered on such presumption, if in a subsequent action or suit the person presumed to be dead shall be proved to be living, shall be restored to him with the rents and profits of the estate with legal interest during such time as he shall be deprived thereof." Art. 5541, Vernon's Civil Statutes of the State of Texas, Annotated.

[2] "The probate of a will, or administration of an estate of a living person shall be void; but the bonds of the executor or administrator shall not be void but may be recovered upon." Art. 3292, Vernon's Civil Statutes of the State of Texas, Annotated.

members of his family, and that they as such were the owners of, and entitled to, all the right, title, and interest of said defendants in the real estate involved. Those provisions in the decree had no foundation other than Art. 5541, and it was by virtue of the decree based upon Art. 5541 that Chris Christiansen took possession and claimed title to Alfred's land. But having recovered the estate that belonged to Alfred on the presumption which that statute announces, he now seeks to have the Court disregard that part of the statute which provides that an estate recovered on such presumption shall be restored to the person presumed to be dead if, in a subsequent suit, the person presumed to be dead shall be proven to have been living. It was an integral, though unwritten, part of the decree that permitted Chris to take title and possession of the land that he restore the property in the event any of the defendants then presumed to be dead later turned out to be alive. Chris's title, or color of title, to this one-sixth interest, was contingent and conditioned upon all of the heirs of Gilbert Christiansen being then dead. He held title and possession to the lots under the obligation of the statute to restore the estate, together with the rents, profits, and interest, to Alfred Christiansen, who not only was alive when the partition decree was rendered on April 3, 1934, but who lived until June 16, 1940. His holding the land could not have been such a holding as would be inconsistent with the statute under which he proceeded, and under which the Court acted in granting the relief which he sought. He took and held the land in recognition of, and not in derogation of, that statute. An heir invoking the statute must hold under the statute. Whether such holding be in trust for the absentee, contingent upon his showing up alive, is unnecessary for us to decide, but we cannot escape the conclusion that Chris's claim of title and possession to the interest of Alfred Christiansen was conditional. It was not hostile and adverse but was subordinate to, and in recognition of, the claim of Alfred, if alive. His was a holding under the statute and not in disregard of it.

Moreover, the decree of partition, rendered in the light of the presumption of death after seven years' absence, adjudged that Gilbert was dead; that Josie and Annie had died without marrying and without issue; and that

"Carrie Christianson and Alfred Christianson have absented themselves from their home and residence for a period of over seven years prior to the filing of this suit, and that they have not been heard of or from during that period of time by their family, their relatives or friends, they and their issue are by The Court presumed to be, and are hereby found to be dead; and that the plaintiffs, C. Christianson and Johanna Carter, are the sole living heirs of Gilbert Christianson, Carrie Christianson, Josie Christianson, Alfred Christianson and Annie Christianson, and as such are the owners of and entitled to all the right, title and interest of said defendants in the real estate herein described; * * *"

The decree also adjudged that Chris and Johanna were each entitled to "$\frac{1}{12}$ in value as one of the heirs of Gilbert Christianson, Carrie Christianson, Alfred Christianson, Josie Christianson and Annie Christianson."

This decree is one of the records that the Court below thought that the plaintiff and her predecessor in title was called upon to exercise diligence to discover. It is this decree that counsel for appellees insists amounted to such a notorious act of ouster as would support limitation in favor of appellees against their co-tenant. It was this same decree that counsel for appellees insists was color of title. Such concepts are in disregard of the fact that the appellees were holding under the decree as an heir of Alfred Christiansen, if he were dead, and not hostilely and adversely to Alfred Christiansen, if he were living. They were holding under the decree *in right of* Alfred Christiansen and not in hostility to him. They did not enter upon the lands as a trespasser but they went upon the lands and stood in the shoes of Alfred. So long as appellees held under that decree, and in subordination to it, they were holding in right of Alfred and not in opposition to him, and such a decree, rendered in the circumstances, was not a notorious act of ouster

and was not color of title upon which to predicate adverse possession, and only by retaking of possession under adverse claim and in denunciation or renunciation of the decree could Chris's possession become adverse so as to ripen into a title by limitation.

Not only is there an absence of any showing of a renunciation of the decree and a claim of adverse possession in disregard of the decree, but on the contrary appellees still claim under the decree, and apart from the decree there is a complete absence of any showing of any notice to Alfred Christiansen or his wife of any adverse possession or of acts of ouster such as would disseize a co-tenant. See Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81.

In the absence of giving to any of the heirs of Gilbert Christiansen notice that appellees were holding the lands hostilely and adversely in such manner as to oust their co-tenants, the statutes of limitations had not run, and could not have run, at the time of the bringing of the suit in the present case. Chris Christiansen, upon giving of actual notice to Alfred Christiansen that he was holding the lands, contrary to the decree, and hostilely and adversely, might have thereby set in motion the running of the statutes of limitations but he could not rely upon the decree in which he stood in Alfred's shoes to set the statute of limitations in motion.

We think the lower Court was in error in holding that the statute of limitations defeated a recovery in this case. The judgment of the Court below is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

SIBLEY, Circuit Judge (dissenting).

The pleadings are profuse and present some questions not dealt with in the lower court or the majority opinion, but the reversal being for further proceedings not inconsistent with the opinion I discuss only what I understand the opinion to require of the lower court in the further proceed-

ings. The opinion does not hold that appellees are trustees of the legal title for appellant, which was one theory of appellant's petition. It does not hold that the partition decree was fraudulent and void. I think it was clearly not fraudulent, for the evidence on which it was granted was preserved in full and shows that no fact was misstated or suppressed. Chris Christiansen testified that he knew his brother Gilbert had this son Alfred, and that if Alfred were then present he would wish him to have his share in the property of his deceased aunt Alette; but that Alfred's father, when he came to Dallas in 1901, there to live and die, had said he was separated from his wife, and she and the two children then living had left Astoria, Oregon, where their home had been; that nothing had been heard of them since; that he did not know where they had gone or where to look for them in 1934, but went to his sister in South Dakota, who also had heard nothing of them. The court which heard this testimony in 1934 may have erred in point of law in thinking is sufficient to raise a presumption of death [1] and in decreeing accordingly, but it shows a full disclosure of the known facts, and not fraud.

The third position of appellant's petition is that the statute, now Art. 5541, Revised Civil Statutes of Texas, gave her husband Alfred, presumed to be dead by the partition decree, a legal right to have his estate in the land "Restored to him with the rents and profits of the estate with legal interest during such time as he shall be deprived thereof". That position is sustained by the opinion, and the district court is held in error for deciding that a recovery by appellant as his heir is barred by limitation. She, suing in her husband's right more than eleven years after the partition decree excluded him from a share, is claiming one-third of the remaining city houses and lots, $10,000 as her share of rents and profits, and one-third of the price, with interest, for which one lot was in 1935 sold to the City of Dallas; and is asking an equitable lien therefor on appellee's shares. The appellees pleaded the four year limitation as

---

[1] See W.O.W. Life Ins. Co. v. Cooper, Tex.Civ.App., 164 S.W.2d 729, Buenros-tro v. American Nat. Ins. Co., Tex.Civ. App., 105 S.W.2d 393.

to the money recoveries, and the five and ten year limitations as to the land. The majority opinion holds that because a division of the lands of Alette Sullivan was decreed by virtue of a presumption of his death, the title to Alfred's share vested in appellees as "contingent and conditioned upon" Alfred being really then dead, and possession under the decree "was not hostile, but subordinate to and in recognition of the title of Alfred if alive", so that no adverse possession could exist as to Alfred's share unless by a renunciation of the decree and "a giving of actual notice to Alfred Christiansen that he (Chris Christiansen) was holding the lands contrary to the decree and hostilely and adversely".

Such a view of the law is alarming to me. Suppose land devolves by will or deed on one as life tenant, who has been absent so as to raise a presumption of his death under the statute; or that property of a deceased person is partitioned as here, one co-tenant being similarly absent; citation of the absent person is duly made under the Texas law, as was done here, and the court presumes and adjudges him dead and puts the remaindermen or the other co-tenants into possession. If there can be no limitation against the demand of the absent one, and no effectual citation of him to assert his right, the title must be incurably clouded for perhaps seventy-five years; and a person by absconding long enough could get the whole property through his claim for rents and profits and interest. The suggested actual notice to the absent person to start adverse possession is not practicable, for his whereabouts is unknown. A purchaser also would necessarily be put on notice from the record of the "condition" in the title and would take subject to it.

Article 5541 is in the chapter on limitations. Its history is this: In 1840 the Legislature of Texas adopted generally the common law of England, Vernon's Ann.Civ. St. art. 1, and expressly repealed the limitation laws and prescriptive title laws of Spanish origin. In 1841, referring to this previous legislation, it enacted a comprehensive Act entitled "An Act of Limitations." [2] Its Section 10 was the present Article 5541. The sections preceding limited suits for money demands and for personal property. Those following fixed the limitations for suits for land under adverse possession, about as they are now. It does not seem reasonable to think the Legislature in Section 10 was erecting an island of immunity in the surrounding sea of universal reposeful limitations. Such immunity ought not to be implied. The section says the estate and rents and profits shall be restored to the presumed dead, but it does not say the restoration may be had at any distance of time. It says "restored *to him*," not mentioning his heirs and assigns, though I would not stick on that, but would think an heir or vendee might assert the demand, it being a property right, in the proper limit of time. I am unable to think the statutory right to have restoration is without a time limit. The right to recover rents and profits ought to be limited as in other cases. The right to recover the land too ought to stand like other cases between cotenants or life-tenant and remaindermen.

Alfred knew his uncle and aunts and where they lived, but he never communicated with his father or his father's family after 1901 when his father went to Dallas. The family never heard of Alfred's wife, the appellant. The uncle and aunts never moved their residence. Alfred, forgetting his kin, forgot also his property prospects through them. I do not see why he deserves any peculiar favor, because they did not know where he was and supposed him dead.

What would be the law aside from Art. 5541? In Cryer v. Andrews, 11 Tex. 170, decided in 1853, a partition decree was made among the heirs of a deceased person. They simply ignored a sister living in another State. The decree was held void as to the absent sister, but the taking possession under it was held a notorious act of ouster that started the running of limitation against her, though she did not know of it. This case was cited and followed in Edwards v. Humphreys, 89 Tex. 512, 36 S. W. 333, 434; and in Honea v. Arledge, 56 Tex.Civ.App. 296, 120 S.W. 508, 511;

---

[2] Laws of the Republic of Texas, Fifth Congress, p. 163.

and Gaddis v. Junker, Tex.Civ.App., 29 S. W.2d 911, 919. Numerous cases hold that mere possession by one co-tenant to the exclusion of another does not show adverse possession or ouster; but that notice of adverse holding need not be actual, and exclusive possession alone may be continued for so long a time and under such circumstances as to warrant a jury in finding that it was notoriously adverse and sufficient to sustain limitation. Honea v. Arledge, 120 S.W. at page 511, and cases cited. Edwards v. Humphreys, 89 Tex. 512, 36 S. W. 333, 434; Mauritz v. Thatcher, Tex. Civ.App., 140 S.W.2d 303; Brown v. Phillips Pet. Co., Tex.Civ.App., 144 S.W.2d 358; Vaughn v. Kiesling, Tex.Civ.App., 150 S. W.2d 435, 436; Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81; Kouri v. Kelton, Tex. Civ.App., 178 S.W.2d 712; Houston Oil Co. v. Davis, Tex.Civ.App., 181 S.W. 851. The answer in this case asserts limitation not only because the partition decree is a binding judgment but also because of long exclusive possession, buying and selling of the property, improving it, and paying the taxes, of which a co-tenant would be bound to take notice. This separate defense I think deserves investigation, although the decree is not res judicata.

The partition decree does not expressly refer to Art. 5541, nor say that the shares it adjudges to appellees are given conditionally, or subject to the appearance alive of Alfred. It does say he is presumed and adjudged to be dead, and thereupon awards *full title* to the parties before the court. In entering under the decree they entered as *claimants of the full unconditional title.* There was a notorious ouster of Alfred and a possession adverse to him. The statute, though not mentioned in the decree, is nevertheless superior to it, and imposes a liability to make restoration to Alfred should he appear alive, thus making the judgment *not really conclusive* against him, but that does not prevent their claim of possession from being adverse.

Article 5541 has been the law of Texas for more than a century. This is apparently the first case in which it has been brought forward as arresting limitation. It did not create the presumption of death, which is old in the common law.[3] It merely declares that a *recovery* of land had on the presumption is *not a conclusive judgment, an estoppel;* that the absentee has not *forfeited* his rights by seven years absence. It does not protect him from losing them by other means, including the limitation laws; nor prevent the possession under the judgment from being a notorious ouster. I think the district judge was right in so holding.

---

[3] Am.Jur., Death, Sect. 18. There was no such presumption in the civil law. Id., Hayes v. Berwick, 2 Mart.O.S., La. 138, 5 Am.Dec. 727. But prescription runs in a case like this one. Louisiana Civil Code, Art. 78. I understand these principles of the civil law were of force in Texas prior to 1840.