

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00223-CV

Maria Lidia **GONZALEZ**, et al.,
Appellants

v.

**ESTATE OF** Idelfonso **RAMIREZ**,
Appellee

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 6215
Honorable Jose A. Lopez, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Irene Rios, Justice

Delivered and Filed:  October 10, 2018

AFFIRMED

In the underlying lawsuit, the plaintiffs, who are the descendants of eight of Manuel Ramirez Serna's nine children, sought to be declared the owners of an undivided interest in 270 acres of real property in Porcion 18 located in Zapata County, Texas. The intervenors, who are the descendants of Serna's other child, sought to be declared the owners of an undivided interest in 33.75 acres of Porcion 18. The trial court granted summary judgment in favor of the defendants/appellees who are the estate and descendants of Ildefonso Ramirez.

On appeal, the plaintiff appellants assert the trial court erred in granting summary judgment because a fact issue exists as to whether a deed from Serna's eight children to Ramirez, which purported to convey the undivided interest in the 270 acres, was forged. The plaintiff appellants and intervenor appellants also assert the trial court erred because the appellees did not conclusively establish their adverse possession claim or their affirmative defenses of res judicata, collateral estoppel, or laches. Finally, the intervenor appellants assert the trial court erred in denying their motion for summary judgment. Because we hold the appellees conclusively established their adverse possession claim, we affirm the trial court's judgment on that basis and do not address the other issues raised on appeal. *See* TEX. R. APP. P. 47.1.

## BACKGROUND

Serna owned an undivided interest in approximately 303 acres of the 7,826 acres of Porcion 18. In 1923, after Serna's death, a deed was purportedly executed by eight of Serna's nine children conveying their undivided interest in 270 acres to Ramirez, who also owned other undivided interests in Porcion 18.[1]

Around the same time the 1923 deed was executed, Ramirez and another individual sued to partition Porcion 18. The pleading listed four pages of defendants including the unknown heirs of one of Serna's ancestors; however, most of the defendants, including the unknown heirs that could have included Serna's children, were later nonsuited. In 1924, an agreed partition judgment was entered in the lawsuit. In the agreed partition judgment, the trial court found "that the persons to whom the respective shares are herein awarded are the owners of each particular tract as against all other parties to this suit." The judgment then partitioned Porcion 18 between the named parties who the judgment identified as "all of the owners of interests in the said Porcion."

---

[1] 303 acres/9 children = 33.67 acres x 8 children = 269.33 acres.

The plaintiffs filed the underlying lawsuit in 2006, and the parties filed cross-motions for summary judgment. The trial court granted the motion filed by the defendants/appellees and denied the motions filed by the plaintiff appellants and intervenor appellants. The plaintiff appellants and intervenor appellants appeal.

## STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *see also Hansen*, 525 S.W.3d at 681. "A [no evidence] motion for summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (2) the respondent [fails to produce more than a scintilla of] summary judgment evidence raising a genuine issue of material fact on those elements." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) ("More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.") (internal quotation omitted). Whether reviewing a traditional or no evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant and resolve any doubts in the nonmovant's favor. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). "When faced with competing summary judgment motions where the trial court denied one and granted the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment the trial court should have rendered." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015).

**ADVERSE POSSESSION**

The plaintiff appellants and intervenor appellants assert the trial court would have erred in granting summary judgment in favor of the appellees on the basis of adverse possession because Ramirez and their predecessors were co-tenants, and the appellees failed to conclusively establish a repudiation of their predecessors' interests. The plaintiff appellants' assertion that Ramirez and their predecessors were co-tenants is based on the 1923 deed being void because some of their predecessors' signatures were forged, and the void deed did not convey their predecessors' title. The predecessor of the intervenor appellants was not a party to the 1923 deed. As previously noted, Ramirez owned other undivided interests in Porcion 18 separate from the undivided interest the 1923 deed purported to convey. Therefore, Ramirez was a co-tenant of the predecessor of the intervenor appellants and, if the 1923 deed is void, of the predecessors of the plaintiff appellants. For purposes of this opinion, we will assume the 1923 deed is void.

"[A] co-tenant may not adversely possess against another co-tenant unless it clearly appears he has repudiated the title of his co-tenant and is holding adversely to it." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 756 (Tex. 2003). "The ouster standard that applies to cotenants differs from the adverse possession requirements courts impose between strangers because cotenants have rights to ownership and use of the property a stranger would not have." *BP America Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011). Accordingly, a co-tenant's possession of property is not adverse until the co-tenancy has been repudiated and notice of such repudiation is brought home to the titleholder. *Hardaway v. Nixon*, 544 S.W.3d 403, 409 (Tex. App.—San Antonio 2017, pet. filed); *Rife v. Kerr*, 513 S.W.3d 601, 616-17 (Tex. App.—San Antonio 2016, pet. denied).

The plaintiff appellants and intervenor appellants assert the 1924 agreed partition judgment did not repudiate the co-tenancy because the judgment only related to possession as between the

parties to the judgment and did not arise in the context of a title dispute. The appellees rely on the Texas Supreme Court's decision in *King Ranch, Inc. v. Chapman* to assert the 1924 agreed partition judgment was a sufficient repudiation.

In *King Ranch, Inc. v. Chapman*, Major William Warren Chapman and Captain Richard King each owned a one-half undivided interest in 15,449.4 acres of land known as the Rincon de Santa Gertrudis. 118 S.W.3d 742, 746 (Tex. 2003). Chapman died testate in 1859, leaving his estate to his wife Helen. *Id*. In 1879, Helen sued King asserting a trespass to try title claim and alleging King ejected her from the Rincon in 1877. *Id*. King asserted he had acquired title by adverse possession from as early as 1857. *Id*. In 1881, while the lawsuit was pending, Helen died, leaving a life estate in her interest in the Rincon to her two children with the remainder interest to her five grandchildren. *Id*. at 747.

In 1883, the parties settled the lawsuit. *Id*. The judgment entered by the trial court stated that Helen's estate was entitled to recover one-half of the Rincon; however, it rendered a money judgment in favor of Helen's estate for $5,811.75, and ordered that all right, title, and interest of Helen's estate in the Rincon be vested in King as consideration for that judgment. *Id*. Therefore, as a result of the judgment, King owed Helen's estate $5,811.75, but King owned the Rincon. *See id.*

In 1995, heirs of the Chapmans filed a bill of review to set aside the 1883 judgment and asserted an alternative trespass to try title action. *Id*. at 749. The trial court granted summary judgment in favor of the defendants. *Id*. The Corpus Christi court reversed the summary judgment and remanded the cause to the trial court for further proceedings. *Id*.

The Texas Supreme Court first addressed the bill of review and held summary judgment was proper as to the bill of review "[b]ecause the Chapman heirs failed to produce even a scintilla of evidence of Richard King's alleged extrinsic fraud." *Id*. at 755. With regard to the trespass to

try title action, the court held adverse possession was established as a matter of law. *Id*. at 756. Noting evidence was required to establish repudiation because Chapman and King were co-tenants, the court held the 1883 judgment was a notorious act of ouster because it vested King with all right, title, and interest in the Rincon. *Id*. at 757.

The plaintiff appellants and intervenor appellants assert the *King Ranch* case is factually distinguishable from the instant case because the 1883 judgment arose in the context of a trespass to try title action which resolved title and the Chapman heirs were parties to the underlying lawsuit. Thus, the plaintiff appellants and intervenor appellants assert the 1924 agreed partition judgment was not a notorious act of ouster because: (1) the 1924 agreed partition judgment only related to possession, not title; and (2) their predecessors in interest were not parties to the lawsuit.

A. Possession or Title

With regard to their assertion that the 1924 agreed partition judgment only awarded possession, the plaintiff appellants and intervenor appellants contend the pleading filed by Ramirez and the other individual only requested possession. Although the pleading initially prays that the defendants be cited to appear and "that plaintiffs have judgment for the possession" of Porcion 18, the petition then states, "Specifically pleading herein, these plaintiffs represent that the whole of said survey is owned by the following named persons and that the hereinafter named persons are the only persons who own land in said Porcion" and further states the land "is susceptible of partition in kind as between the co-owners of said land."

"Texas follows a fair-notice standard for pleading." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017). Under that standard, pleadings must give fair notice of the nature and basic issues of the controversy so the opposing party can prepare a defense. *Id*. at 224-25. In this case, we conclude the allegations in the pleading were sufficient to

put the defendants on notice that the plaintiffs were claiming to be the exclusive owners of the land.

Furthermore, in the judgment, the trial court "finds that the persons to whom the respective shares are herein awarded are the owners of each particular tract as against all other parties to this suit." The judgment then orders the land "partitioned between the following named parties, who constitute *all of the owners* of interests in the said Porcion." (emphasis added). We conclude the 1924 agreed partition judgment declared the parties among whom the land was partitioned to be the owners of the land. *See King Ranch, Inc.*, 118 S.W.3d at 755, 758 (recognizing "the wisdom in protecting the stability of final judgments" and declining to "second guess, with benefit of hindsight, the wisdom of settling ancient litigation").

B.     Parties to Lawsuit

With regard to the appellants' argument that their predecessors were not parties to the lawsuit resulting in the 1924 agreed partition judgment, the appellees rely on the Texas Supreme Court's analysis of two partition cases in *King Ranch, Inc.* in which the excluded co-tenant also was not a party. The two partition cases cited in the *King Ranch* opinion are *Republic Production Co. v. Lee*, 121 S.W.2d 973 (Tex. 1938) and *Cryer v. Andrews*, 11 Tex. 170 (1853).

In *Cryer v. Andrews*, George Duty owned a tract of real property which was left to his brothers and sisters as his heirs when he died. 11 Tex. at 180. In 1839, a probate court divided the property among all of George's brothers and sisters except one sister who was not assigned any interest in the property in the probate court's decree. *Id.* The Texas Supreme Court concluded the partition in the probate court's decree would generally be considered "a notorious act of ouster" and would bar the excluded sister's trespass to try title claim. *Id.* at 181. The Texas Supreme Court reasoned:

> But, inasmuch as this partition was a notorious act of ouster, the other parties claiming the whole of the land, to the exclusion of the plaintiff, it would, on general principles, as against a citizen not laboring under a disability, operate as the commencement of prescription in favor of all who held adversely, under such decree; and possession under it, accompanied with the circumstances enumerated in the statute, would ripen into a bar against a joint owner thus disseized.
> Had Mrs. Cryer been a citizen of the Republic, and an unmarried woman, at the time of partition, the adverse possession of defendants would have barred her action.

*Id*. (internal citation omitted). The court then examined the effect Mrs. Cryer not being a citizen of the Republic had on title. *See id*. at 181-85. The analysis required due to the fact that Mrs. Cryer was not a citizen does not, however, detract from the legal pronouncement made by the court regarding the adverse possession of a cotenant's interest through a judicial partition and subsequent possession. As the court recognized, adverse possession based on the judicial partition among the cotenants and subsequent possession would have barred Mrs. Cryer's claim if she had been a citizen of the Republic. *Id*. at 181.

In *Republic Production Co. v. Lee*, five cotenants entered into an agreed partition, excluding a sixth cotenant. 121 S.W.2d at 257, 260. Although the court was called upon to examine the effect of an agreed partition among cotenants, as opposed to a judicial partition, the court first explained the legal effect of a judicial partition in the context of an adverse possession claim. 121 S.W.2d at 262-65. The court first recognized that a partition of a tract of land by two or more cotenants setting apart the whole of the tract to the exclusion of a non-participating cotenant when followed by adverse possession "even if wholly void as against the excluded cotenant, constitutes a complete and unequivocal repudiation of the cotenancy relationship" and is an "act manifesting an intention on the part of the participating cotenant[]s to oust the other cotenant or repudiate the tenancy relationship with him." *Id*. at 262; *see also Reed v. Rice*, No. 09-10-00215-CV, 2011 WL 4537908, at *3 (Tex. App.—Beaumont Sept. 29, 2011, no pet.) (mem. op.) ("When co-tenants partition the whole of the property, to the exclusion of a non-participating

co-tenant, the act of partition affects an ouster of the excluded cotenant."); *Dyer v. Cotton*, 333 S.W.3d 703, 711 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("*Lee* recites the rule that a partition by two or more co-tenants, when followed by exclusion of a fellow co-tenant, constitutes a complete and unequivocal repudiation of the co-tenancy relationship.") (internal quotation omitted); *McCook v. Amarada Petroleum Corp.*, 93 S.W.2d 482, 484 (Tex. Civ. App.—Texarkana 1936, writ dism'd) ("[I]t is held in this state that a partition decree such as the one entered in this case is sufficient to constitute such ouster."). The court then noted, "Perhaps the best expression in all the books as to the effect of a partition, so far as an ouster is concerned, is that contained in the case of *Honea v. Arledge*, in which writ of error was refused." *Republic Production Co.*, 121 S.W.2d at 262 (internal citation omitted).

In *Honea v. Arledge*, the appellant claimed an interest in land through his marriage to a daughter of Wm. Arledge and his wife, and their child who survived appellant's wife by only a few days. 120 S.W. 508, 509 (Tex. Civ. App. 1909, writ ref'd). Mrs. Arledge died in 1876, appellant's wife died in 1881, and Wm. Arledge died in 1894. *Id.* "The year after the death of Wm. Arledge, his surviving children and grandchildren, by a proceeding instituted in the district court of Fannin county, had a partition made of the Arledge estate among themselves." *Id.* "The appellant was not a party to this proceeding, and his claim of an interest in the estate was ignored by those heirs who were parties." *Id.* After the partition, the adults and the guardians of the minors who were allotted land took immediate possession of the portions of the land allotted to them in the partition and either they or their purchasers continued their possession until the institution of appellant's lawsuit. *Id.* The evidence further established the appellant never lived in Fannin county but lived in different parts of the state after the death of his wife and child. *Id.* The appellant also did not know about Wm. Arledge's death until two years before he filed his lawsuit in 1908.

*Id.* In examining the effect of the judicial partition on the adverse possession claim of the appellees, the court held:

> It is difficult to conceive of an overt act more notorious in character, and more clearly indicating a purpose to appropriate the common property to the exclusion of another joint owner, than was evidenced by the partition proceedings instituted by the heirs of Wm. Arledge, and their subsequent use of their respective portions. It showed an unequivocal intent upon their part to ignore whatever claim the appellant may have had, and to divide up the land and use the different parts in severalty. The decree of partition was intended to have the effect of vesting in each an exclusive personal right to hold that portion allotted to him, and clearly indicated the purpose of each to so hold his portion. These acts were open and notorious, and occurred under such conditions as could not leave any room to doubt the purpose of those engaged in bringing them about. It is immaterial that the appellant was not in the vicinity of where the land was situated, and did not have actual knowledge of those proceedings. They were of such a character as he was compelled to notice at his peril.[2]

*Id.* at 511.

Although the above-cited opinions clearly recognize that the 1924 agreed partition judgment was an act of ouster or repudiation, the appellants argue the repudiation must also be "brought home to the titleholder," and they assert it was not "brought home" to their predecessors. In *King Ranch, Inc.*, the repudiation was necessarily "brought home" because Helen and her estate were parties to the lawsuit. In *Republic Production Co.*, however, the Texas Supreme Court further examined the notice requirement.

Initially, it appeared the court would apply the principle of "constructive notice." 121 S.W.2d at 978 ("The sole question remaining, therefore, is whether or not there was constructive notice to plaintiff of such repudiation and adverse claim; that is, were the facts and circumstances

---

[2] We note the appellate court was addressing a jury charge issue which required the court to determine the applicable law and whether and how it should have been submitted to the jury. We further note the court concluded repudiation and notice of repudiation were not issues of fact which the trial court was called upon to submit to the jury. *See id.* at 511. ("The only issue of fact, so far as concerns this appeal, which the court was called upon to submit to the jury (even if he was required to submit that) was that as to whether the appellees and those under whom they claimed had held their respective tracts of land set off to them adversely through the period of limitations after the partition had been made.")

concerning the partition, occupancy, use and possession of the land sufficient that it may be said, as a matter of law, that plaintiff was visited with constructive notice of the adverse possession and claim."). If the court had relied on the concept of "constructive notice," this court has held evidence of constructive notice based on long-continued possession under a claim of ownership and nonassertion of a claim by the titleholder who is a cotenant is insufficient to support a summary judgment because such evidence only raises an inference of an ouster, and we cannot indulge in inferences in favor of the movant in affirming a summary judgment. *See Hardaway*, 544 S.W.3d at 412-13. However, the court in *Republic Production Co.* subsequently adopted a broader statement of the law regarding notice being "brought home" asserting:

> "To constitute an adverse possession of one tenant in common against his co-tenants, there must be some notorious act asserting an entire ownership. It is further said in some cases that this act must be brought home to the knowledge of the co-tenant. This, we suppose, depends upon the nature of the act. If it consists altogether of a mere verbal assertion of entire ownership, such an assertion could not with any propriety be regarded as an act of adverse possession of which the co-tenant was bound to take notice, unless made to him or communicated to him. A declaration to a mere stranger amounts to nothing, unless that declaration is brought to the knowledge of the co-tenant. But when the act is of such a nature as the law will presume to be noticed by persons of ordinary diligence in attending to their own interests, and of such an unequivocal character as not to be easily misunderstood, it is not believed to be necessary that any positive notice should be given to the co-tenant, or that it devolves upon the possessor to prove a probable actual knowledge on the part of the co-tenant. It is sufficient that the act itself is overt, notorious; and if the co-tenant is ignorant of his rights or neglects them, he must bear the consequences."

121 S.W.2d at 981 (quoting *Warfield v. Lindell*, 30 Mo. 272 (1860) and describing the opinion as "[t]he most accurate statement of the rule applicable" in charging a co-tenant "plaintiff with notice of the disseizin and adverse claim of the defendant"). Additionally, prior to this broad pronouncement, the court explained how notice is brought home in the context of a judicial partition asserting:

> [A] partition proceeding in a court, which is undoubtedly void as to a cotenant not a party thereto, … is an act of such "public notoriety" as to constitute notice of disseizin.

121 S.W.2d at 979.

In their reply brief, the intervenor appellants assert the court's holding in *Republic Production Co.* was narrow and was based on the trial court's factual findings that the adverse possession in that case was notorious and open. As previously noted, however, the court in *Republic Production Co.* was examining an agreed partition, not a judicial partition. The previously cited caselaw, however, recognizes that the 1924 agreed partition judgment was an open and notorious repudiation, and the only remaining question was whether the repudiation was required to be "brought home." We conclude the above-quoted language from *Republic Production Co.* provides that whether the notorious act must be "brought home" depends on the nature of the act, and when the act is sufficiently notorious, then the act is not required to be "brought home." Instead, when the act is sufficiently notorious and "the co-tenant is ignorant of his rights or neglects them, he must bear the consequences." *Id.* The court further recognized a judicial partition "is an act of such 'public notoriety' as to constitute notice of disseizin," *id.*, and also recognized this law applies regardless of whether "the appellant was in the vicinity of where the land was situated and did not have actual knowledge of those proceedings. They were of such a character as he was compelled to notice at his peril." *Id.* at 978 (quoting *Honea*, 120 S.W. at 511). Therefore, we read *Republic Production Co.* to recognize that when a court enters a partition judgment which excludes a co-tenant, the partition judgment itself is sufficiently notorious such that the judgment is not otherwise required to be "brought home" to the knowledge of the excluded co-tenant. Because the only elements of the appellees' adverse possession claim challenged by the plaintiff appellants and intervenor appellants on appeal are whether the co-tenancy was repudiated and whether notice of such repudiation was brought home, and the case law recognizes

the 1924 agreed partition judgment satisfied those elements, we hold the trial court properly granted summary judgment in favor of the appellees on the basis of adverse possession.[3]

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

---

[3] We note that after analyzing the law holding a judicial partition is a repudiation which provides sufficient notice to a co-tenant, the court in *Honea* stated, "The only issue of fact, so far as concerns this appeal, which the court was called upon to submit to the jury (even if he was required to submit that) was that as to whether the appellees and those under whom they claimed had held their respective tracts of land set off to them adversely through the period of limitations after the partition had been made." 120 S.W. at 511. Here, because the plaintiff appellants and intervenor appellants do not challenge this element of adverse possession after partition in their briefs, we do not address it. *See* TEX. R. APP. P. 38.1(f) ("The brief must state concisely all issues or points presented for review.")